ROWLAND SOYE AND OTHERS v. JOHN M. McCALLISTER AND OTHERS.

Where a deed recited the parties as A of the first part and B, C, D and E, "heirs and legal representatives of F, deceased," of the second part, and purported "in consideration of five hundred dollars paid by the party of the second part to the party of the first, the receipt whereof is hereby acknowledged," to convey from the party of the first part to the party of the second part a certain league and labor of land, with general warranty, the Court said that *prima facie* it must be taken that the consideration moved from the ancestor F, and that the land was assets in the hands of his administrator. But it does not rest alone, &c.

It is unnecessary to discuss the question whether the agreement (dated in 1833, for the sale of a concession for a league and labor of land, the title for which had not been extended,) was, to all intents and purposes, null; or was only in so far inoperative and ineffectual, as that it could not be enforced, unless it was validated by the grantee, after the removal of the legal impediment; or unless there were supervening equities, which had the effect to make good the title in the purchaser. Whatever theoretical opinion may be entertained of the question, it cannot be denied that, practically, the latter view of it has been maintained. But though it be utterly void, &c.

Where A contracted to convey his concession for a league and labor to B, in 1833, before the extension of the title thereon, for the price of eighty dollars, the receipt of which was acknowledged, and B having died, A, in 1838, conveyed the said land to C, D, E and F, "heirs and legal representatives of B," the conveyance purporting to be in consideration of five hundred dollars paid by C, D, E and F to A, and warranting the land to them; and C, D, E and F, were at the time minors of tender age, under the protection of the administrator of B; and said land had been inventoried as the property of the estate of B before the conveyance to C, D, E and F, and was sold at administrator's sale as the property of said estate in 1840; and C, D, E and F first brought suit to recover said land in right of their ancestor B, which suit they dismissed, and sued to recover the same in right of the conveyance from A to them in 1838; held, that if it were admitted that the agreement between A and B was null and void, as being in violation of law; yet, there being nothing in the evidence to countervail the *prima facie* presumption arising from the face of the deed from A to C, D, E and F, that the conveyance was virtually and beneficially for the estate, but the contrary, said deed vested the title in the estate of B and not in C, D, E and F, in their own right.

Soye v. McCallister.

The principal objection to the sale in the present case is, that it does not appear that the term of administration was continued down to the period of the sale. The administrator, however, continued to act under the sanction of the Probate Court; and there is more than the usual apparent regularity in the proceedings, in other respects. That the absence in the record, of any evidence of the extension by the Court of the term of administration, does not invalidate the title of the purchaser, has been fully settled in the cases referred to.

Where husband and wife both died about the same time, and it did not appear which died first, and administration was taken out upon the estate of the husband, and land was sold, and it did not appear that the debts for which it was sold were not community debts, it was held that the heirs of the wife could not claim that the wife's interest in the property, presumed to be community property, did not pass by the sale; and the Court said there was no necessity for two administrations upon the same property, to pay debts for which it must have been equally liable, in the hands of the administrator of either or both of the decedents.

Where a succession was opened in 1834 by the appointment of A as curator, and A next appeared as administrator in 1837, and acted and was recognized as such by the Probate Court, until 1840, it was held that the Court properly refused to instruct the jury, that if five years elapsed from the original appointment of A as administrator in 1834, before the order of sale was granted, the Court had no power to continue him in his functions, and his acts after five years had elapsed from his original appointment, in selling the land claimed, were null and void.

In a controversy respecting the title to land sold at administrator's sale, it is not proper to instruct the jury, that if the administrator had in his hands sufficient assets to pay all the debts of the estate, there was no necessity for the sale, and the Court was without power to grant an order of sale, and that a purchaser would be presumed to have full notice of the want of such power.

See this case for an example of where the Court having given in charge to the jury the law applicable to the allegations and evidence, refused to give other instructions at the request of a party.

A conveyance to the heirs of a deceased person *prima facie* enures to the benefit of the estate of such deceased person, and the property thereby conveyed is subject to sale, etc., same as other property of the estate, without any conveyance from the heirs or proceeding in Court to divest them of the title; such *prima facie* presumption may be rebutted by showing that the consideration moved from the heirs and not from the ancestor, or that the conveyance was a gift or bounty, but not by showing that the conveyance was made in pursuance of, or by reason of, a previous illegal contract between the grantor and the ancestor of the grantees, in which the ancestor paid the price of the land.

6

Appeal from Bexar.    Tried below before the Hon. Thomas J. Devine.

Action of trespass to try title, commenced October 14th, 1853, by Rowland Soye, Elizabeth Soye, and Ellen Soye, a minor, against John M. McCallister, John S. McClellan, John James, Andrew Spira, James Newton, James R. Sweet, Claiborne Rector and Edward Gallagher. The defendants claimed different parts of the league and labor of land sued for, under a sale by the administrator of John Soye, the ancestor of the plaintiffs ; and the plaintiffs prayed a recovery of the land and a cancellation of the administrator's deed, which they alleged was a cloud upon their title.

The plaintiffs proved an original grant from the State of Coahuila and Texas, of one league and labor of land, to Juan Delgado, on the west bank of the Cibolo, dated September 10th, 1833 ; a deed dated October 6th, 1838, from Juan Delgado, of the first part, to John Soye, Rowland Soye, Elizabeth Soye, and Ellen Soye, " heirs and legal representa- " tives of John Soye, deceased, of the second part," for said league and labor of land, expressed to be " for and in con- " sideration of the sum of five hundred dollars, paid by the " party of the second part to the party of the first part, the " receipt whereof is hereby acknowledged," with general warranty. Recorded same day. Proof that John Soye, brother of plaintiffs, died in 1842 without issue. Here the plaintiffs rested.

Defendants read in evidence the petition in another suit, by plaintiffs against J. M. McCallister and others, commenced April 30th, 1853. It alleged that their father, John Soye, of said county and State, departed this life many years ago, leaving your petitioners, and John Soye, his sole heirs and legal representatives ; that the said John Soye has since departed this life without issue ; that at the time of the death of said John Soye, he owned one league and labor of land, lying, be-

ing and situated in said county of Bexar, on the east side of
the Cibolo, just below the Gonzales road, originally granted to
Juan Delgado, and conveyed by said Delgado to the said
John Soye, and afterwards also conveyed to your petitioners,
&c.

The defendants then read in evidence the proceedings of
the Probate Court of Bexar county in the matter of the suc-
cession of John Soye, the plaintiffs excepting to the reading of
the same, so far as they showed any action of the administra-
tor at any time after the lapse of one year from and after the
20th day of December, 1836.   First: bond of John McMullen
as administrator of John Soye, dated and filed August 29,
1837 ; it contained a recital as follows : " who was previously
" appointed administrator," &c. ;  petition of administrator,
August 30, 1837, for continuance of the Term of administra-
tion ;  August Term, 1837, petition of a creditor for order for
payment of a debt ; order made ;  October 30, 1837, citation
for John McMullen, administrator of the estate of John Soye,
to appear same day and await the order of the Court ;  April
12th, 1838, citation to John McMullen, administrator, &c., that
he, the said administrator, be and appear at the next Term of
the Probate Court, to be holden at the Courthouse, in the city
of San Antonio, on the last Monday of April, 1838, (being the
30th day of the present month,) then and there to make settle-
ment of the said administration and that the necessary division
among the heirs be made, so that the guardian may receive the
same in due form ; recitation in the citation as follows :  Order
of the Hon. the Probate Court in and for the county of Bexar,
at the January Term, 1838, continued at February Term, and
same at March Term, 1838. May 21, 1838, citation to same, reci-
ting a peremptory order of the last Term, to settle his ac-
count at the next, and also to pay claims ;  April 31st, 1840,
citation to same to settle his account, " so that the same (the
" estate) may be finally closed, and the estate, property, money,
" &c., delivered to the guardians of the infant heirs of said

"deceased;" May 4th, 1840, notice to John M. McMullen, administrator, &c., that a judgment was rendered against said estate, at the last Term, for $800 in favor of, &c.; another similar notice, same date, for amount of $96; June Term, 1840, petition of *curator ad litem* for allowance of his claim for $250 for services; July 22, 1840, notice to appraisers to appear and be sworn; July 24th, 1840, inventory and appraisement of all the real property known to the administrator as belonging, &c.; it consisted of "one league and "labor of land, purchased of Juan Delgado, $1,000; another league and labor, $1,000; deccased's headright certificate, $150; concession of league and labor to Jesus Valdez, purchased, &c., $150; one-eighth interest in the Hernandez tract, in forks of the San Antonio and San Bartolo, $450 50; September 30, 1840, petition of said administrator representing that there "are debts due and owing by said estate, over and "above the cash assets in his hands, as will appear by refer- "ence to his account current, as filed in the Court," and praying an order "to sell so much of the property of said estate as "may be sufficient," &c.; November 30, 1840, return "that in "pursuance of an order of Your Honorable Court, he offered "for sale, as required by the law, on the first Tuesday of No- "vember, instant, the property specified in said order, when he "sold one league and labor of land on the Cibolo to C. Van "Ness, at twelve and a half cents per acre, amounting, &c.; "there being no bidders for the rest of the property, no fur- "ther sale was effected, and the same has been advertised for "sale at the next judicial sale day;" December 5, 1840, similar return of sale of all the other property in the inventory, the concession of a league and labor to Jesus Valdez to Samuel A. Maverick for $26, and the headright of the deceased to same for $101. Here followed the certificate of the Clerk of the Court, "that the foregoing transcript contained a true "copy of the papers filed in the estate of John Soye, deceased.'

The defendants then introduced a transcript certified to be

" a full and correct copy of all the entries on the minutes of the
" Probate Court of said County." It commenced with on entry
as follows :   Docket of the Probate Court, May Term, 1837.

| No. 8. | Estate of Dec'd, | Ex'r or Adm'r, | Remarks. |
| 12 Sept. 1834. | JOHN SAWYER. | JOHN M. Mc- MULLEN. | Debts Standing. |

The first column is probably the date of the opening of the
succession or grant of administration.   There were orders
entered at the following Terms :   May, 1837 ;   June, 1837,
" continued until the next Term of this Court ;" July, 1837,
same order ;  August, 1837, several orders ;  September, 1837 ;
October, 1837 ;   November, 1837, docketed, but no order ;
December, 1837, " continued until next Term of this Court ;"
January, 1838, order, &c. ;   February, 1838, order, &c. ;   March,
1838, same ;  April. 1838, same ;  May, 1838, same ;  June, 1838,
several orders ;   July, 1838, several orders ;  August, 1838,
order, &c. ;   next entry June, 1839, order, &c. ;   next entry
February, 1840, order, &c. ;   March, 1840, " continued ;"  April,
1840, order as follows :  This case came on to be heard, the
administrator and attorney *ad litem* present.  It appears to
the satisfaction of the Court here, that there are twenty-five
hundred and fifty-three dollars, seventy-six and one-half, assets
in hand, &c. ;   March, 1840, " continued ;"   July, 1840, same ;
August, 1840, order, &c. ;  September, 1840, order as follows :
The administrator came and presented an account current of
the estate, and also presented and filed petition praying sale of
the real estate to cover the debts of the estate.   Order of sale
granted, and that the administrator proceed and make the sale
as the law directs for cash ;  October, 1840, " continued ;" No-
vember, 1840, order. &c. ;   December, 1840, " second sale bill
" filed 5th December, 1840, the first having been filed Decem-
" ber 1st, 1840 ;"  February, 1841, " continued ;" March, April,
May, 1841, entries of continuances ;  June, 1841, administrator
having given notice and filed his account, was ·discharged.
If the jury had been permitted to do so, from the papers in

evidence, they would no doubt have found that the adminis.
trator had sufficient assets in his hands to pay the debts of
the estate, without selling the real property. The defendants
then proved that the father and mother of plaintiffs died in
San Antonio de Bexar in August, 1834, leaving plaintiffs and
one John Soye, Jr., their only children and legal heirs.

Defendants read in evidence the following document:

Seal third.      [SEAL.]      For the two years,
Two bits.               1832 and 1833.

In the city of San Fernando de Bexar, on the second day of
December, 1833, I, the citizen Juan Delgado, resident of the
town of San Felippe of Austin, native of this city, and for the
present living in it, declare by these presents that I acknowl-
edge to sell, with my free will, to the citizen, Juan Soye, a
resident and merchant of the same town, to-wit: A concession
of the Supreme Government of the State for one sitio of land
and one labor, of the public domain of this Department, bear-
ing date 20th April, 1831, for the consideration of eighty dol-
lars, I have received of the aforesaid citizen Juan Soye to my
full satisfaction; being a condition agreed upon and under-
stood between both buyer and seller, that the first will have
sufficient power from the second in order to obtain, in the
name of the grantee, from the Supreme Government, the pos-
session and title for the aforesaid land, in the place he may
point out. Four years must elapse from the date of the title
and possession, to change this private instrument to a public
one, with all the solemnities and requisites of the law; being
understood that, during these four years, the buyer shall be
entitled to use said land as his own, and perform all kinds of
work and improvements, which he may see proper, to enhance
its value, under the express and agreed penalty, that if the
vendor, after the expiration of four years mentioned in the
foregoing clause, should refuse to grant the public title herein
mentioned under any pretext, the vendor binds himself to ex-

hibit to the buyer an amount of four thousand dollars in ready cash money, or equivalent property, as an indemnity for the cost, damages and losses, resulting to the buyer for want of title to the property, such as one public document in due form, and moreover in consideration of the expenses that said buyer may have done on the aforesaid land. It is also understood and agreed between the buyer and vendor, as a condition, that, if by some unforseen accident, the buyer should die before the expiration of the four years fixed for the execution of the title deed of sale, this one must be made, in the aforesaid term, in favor of the widow and heirs of the buyer, in conformity with the established laws. And it is the will of the vendor that, in the unforseen case of death, his administrators and heirs shall comply exactly with the provisions of this document, which I will and it is my volition, shall have the same value as if it was judicial, and to that effect I renounce all the laws and customs that can favor me, and I submit myself to the jurisdiction of all Justices and Courts which may take cognizance of my case at law; *si convenerit de jurisdictione omnium judicium*, with the general law, *el derecho en forma*.

In testimony whereof I have granted this, and knowing not how to write my name, I pray the citizen Ynacio Herrera of this place to do it for me before the undersigned witnesses, in the aforesaid city, on the same day, month, and year.

At the prayer of the granting party I do sign.

YNACIO HERRERA.

Attested by seven subscribing witnesses.

Defendants then read a deed from McMullen, as administra_tor, &c., to Van Ness, dated November 5th, 1840. It was admitted that all the estate which Van Ness took by reason of said deed, was vested in the defendants by regular mesne conveyances. There were suggestions of possession and improvements in good faith, and evidence thereto, which is omitted, as not now important. No order was shown expressly continu-

ing the administration, in the sense in which those terms have been understood when applied to administrations.

The plaintiffs then introduced a transcript from the records of the Court of the first instance, of proceedings in 1834, showing the death of John Soye, and the appointment of McMullen as curator, &c., of his estate ; and proved that Rowland Soye was twenty-three years of age on the 17th of June, 1854; Elizabeth Soye, twenty-one, and Ellen Soye, between nineteen and twenty ; and that defendants were in possession of the land sued for.

The Judge instructed the jury, without request, as follows :

1st. The plaintiffs sue for the recovery of the land described in their petition, which land it is alleged, the defendants claim by a pretended sale made by McMullen, claiming to be administrator of their deceased father's estate.

2d. The defendants deny the right of the plaintiffs to recover, and assert a right to the land through conveyances from the vendees of Van Ness, the purchaser at a sale made by Mc-Mullen, acting as they assert as administrator of John Soye, the father of plaintiffs.

3d. The defendants also claim to be purchasers in good faith, and in possession of the land for twelve months before the commencement of this suit, and they claim pay for their improvements.

4th. The real or supposed inadequacy of price ; the want of any necessity for an order to sell the land, or any real or supposed unfairness on the part of McMullen, while acting as administrator, are questions that are not in issue on the trial. They are questions with which you have nothing to do.

5th. The sole questions for your consideration, in making up your verdict, are simply these ; had the estate of John Soye such an interest in the land, as would make it liable for the payment of his just debts or claims against his estate? Was McMullen the administrator of Soye's estate? Did he petition for, and, as administrator, obtain from the Probate Court,

an order of sale, and did he as such administrator, and by virtue of such order, sell in accordance with law the same to Van Ness?

6th. The recognition of a party as administrator by the Probate Court, and the continuous action of the Court with reference to the administrator while acting as such, is legal evidence of the party's character, and will support rights acquired by a third party, at a sale made under the order of the Probate Court, obtained and carried into effect by such administrator.

7th. The records of a Court of competent jurisdiction are evidence of what they contain or assert, and are conclusive on such matters, unless attacked for fraud, and such fraud proven.

8th. The fact of land claimed by an intestate's estate being conveyed by the original grantee to the children, as heirs of their deceased father, will not destroy or weaken the right of creditors, or others in such estate, unless the facts show that the transfer to the heirs was made upon such valuable consideration as would justify and enable a stranger to hold the land against the estate, or those representing such estate.

9th. If from the evidence you believe that this land was claimed by "Soye's estate," and the transfer from Delgado to the minor children was made by him, not to the children, as purchasers in their own right, but to them as the heirs of John Soye, deceased, and as carrying out in good faith the agreement or understanding between himself (Delgado) and John Soye, the plaintiffs' father, and that McMullen, as the administrator of Soye's estate, petitioned for and obtained an order to sell, and, as administrator did sell in accordance with law, the land to Van Ness, then you will find a verdict for defendants.

The instructions as to the issue of valuable improvements, not being now important, are omitted.

The plaintiffs requested the Judge to charge the Jury as follows :

1st. That the act, or contract, between Juan Delgado and John Soye in reference to the land in controversy was in violation of the law then in force, which inhibited a sale by Delgado, before the expiration of four years after the date of the grant, and said act was therefore a mere nullity, which conveyed no estate to Soye or his heirs, legal or equitable ; gave the heirs no right in the property or to the property, nor did it divest the said Delgado of any property in the estate, or create any obligations upon him to specifically perform the contract, or to convey to Soye, his legal representatives or heirs ; nor did it operate as an estoppel on said Delgado, but he was still left free to dispose of the land as soon as the inhi. tion was removed.

I give you this instruction with this qualification : That if you believe Delgado conveyed to Soye's children by way of carrying out in good faith his original understanding or agreement with Soye, and that it was intended to convey for the benefit of the estate of Soye, it was liable for the debts of his estate. (Signature of Judge.)

2d. That as soon as the legal inhibition was removed, Juan Delgado had the legal right to convey his estate in it ; and his conveyance to the plaintiffs created in them a legal and valid estate, independent of any rights of the creditors of their ancestors, the administration and all other persons.

3d. That the law, *prima facie*, presumes that the consideration, acknowledged in the deed, was paid by the grantees ; but whether the deed was with or without consideration paid by the defendants, it was binding upon the grantors, and the defendants can have no benefit from the want of consideration.

4th. The admissions in the deed are evidence of the facts recited as between the parties and privies thereto, and by privies is meant those who derive title under a deed ; therefore the defendants cannot be heard to deny the recitals in the act between Delgado and Soye, but they are bound thereby.

5th. And if such recitals show that the act is void, it forms no foundation for title in the defendants.

6th. That the deed from Delgado to Juan Soye conveyed no property, and therefore was no evidence that the land was assets of the estate of John Soye subject to administration.

7th. That if the jury believe from the evidence that the land in controversy was not the property of John Soye, but the property of the plaintiff, then the administrator had no right to sell the land, and the sale by him did not affect the rights of the plaintiffs, and the purchasers took nothing by the sale.

8th. That, even had the heirs purchased and held in trust for the benefit of creditors, they could not have been divested of the estate by the administrator's sale, but it could only have been divested out of them by their own voluntary conveyance, or by a decree of the District Court.

9th. If the deed from Delgado to the plaintiffs had been duly registered before the administrator's sale it was notice to all the world, and the defendants are charged with this notice of adverse right.

10th. That if the jury believe from the evidence, that more than one year had elapsed after the appointment of McMullen as administrator, before the pretended sale, then the sale was void, unless the jury believe from the evidence that he, McMullin, had been duly and legally appointed administrator.

(No. 11 is wanting in the transcript, and was probably embraced in the general charge of the Judge.—REPS.)

12th. The records of the Probate Court having been given in evidence to the jury, they are not at liberty to presume the existence of any records not therein found.

13th. Presumptions of facts and records, which form the basis of title, cannot be indulged against the plaintiffs who were infants.

14th. The records and judicial proceedings of Courts of record cannot be presumed, but they must either be proved by

the records themselves, by copies thereof, or by proving their destruction or mutilation, and then proving their contents.

15th. That, if the jury believe from the evidence that at the time of the administrator's sale the land was the property of the plaintiffs, then the Probate Court had no power and jurisdiction to sell the land at the suit of the administrator, and their rights were unaffected by said sale.

16th. That, if the jury believe from the evidence that, before the sale the administrator had fully paid the debts of Soye and been discharged, then there was no power in the Probate Court to re-appoint him, and the fact that the Court subsequently recognized him as administrator, gave him no right to sell the land, and all his subsequent acts were void.

17th. When the estate of a decedent is so far administered that nothing remains to be done, but to discharge the administrator formally, after his compliance with an order for distribution, the Probate Court has no power to appoint another administrator on said estate, or to re-appoint the same, and the act of the Probate Court in making such appointment, would be void and of no effect.

18th. When the Probate Court has once entered a judgment or decree against the personal estate of an administrator in favor of creditors, the same becomes final and the Court has no power at any subsequent term to alter, or revise, or set aside said judgment.

19th. Even admitting that the contract between Delgado and John Soye created an equitable estate in John Soye, still any such interest enured to the benefit of Soye and his wife, as community property, and the administrator could at most have conveyed one-half the estate, and the children have the right to recover one-half the estate.

20th. That if John Soye died bfore his wife, one-half of all the property held by him and his wife, as community property, vested in his heirs immediately, subject only to his debts, and the other half remained the property of the wife, and upon her

death vested immediately in her children, and they could not be divested of such property, descended from their mother, by any act of their father's administrator.

21st. That, if the jury believe from the evidence that a petition for the sale of the land and the decree to sell it, does not describe the land in controversy with such certainty to convince them, the jury, that the land in controversy was decreed to be sold, then the sale did not pass the land, and the jury are to determine from the record what land was intended.

22nd. That the administrator of John Soye had no right to sell any property except what belonged to him.

23rd. And had no right to sell his estate except for the payment of debts and the expenses of administration.

24th. And a sale, with a view to defraud the infant children, was void and could convey no property to the purchaser.

25th. That, if the decree for the sale was procured by fraud, it was void, and fraud may be proven by circumstances.

26th. Fraud vitiates every act, even the most solemn decree of Courts of Justice.

27th. As to whether John McMullen was, or was not re-appointed administrator of the estate of John Soye, deceased, is a question of fact to be determined by the jury from the record and proceedings of the Probate Court, and, if from an examination of said records, the jury believe McMullen was not re-appointed administrator of the estate of John Soye, within twelve months of the date of sale, or that he did not renew his bond as such, they will find for the plaintiffs, as he was without power to sell.

28th. If more than five years elapsed from the original appointment of McMullen, as administrator of the estate of John Soye in 1834, before the order of sale was granted, the Court had no power to continue him in his functions and his acts, after five years had elapsed from his original appointment, in selling the land claimed were null and void.

29th. If the jury believe from the evidence that McMullen

had in his hands sufficient assets to pay all the debts of the estate, and that this appeared from a judgment of the Probate Court, and the account current of the administrator, there was no necessity for the sale, and the Court was without power to grant an order of sale, and a purchaser would be presumed to have full notice of the want of such power.

.I give instructions Nos. 1 and 11, and decline giving Nos· 2, 3, 4, 5, 6, 7, 8, 9, 10, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27. 28.

(Signature of the Judge.)

Verdict and judgment for the defendants. Motion for new trial overruled, &c.

*Waul & Wilson*, for appellants. 1st. The agreement between Delgado and Juan Soye, was null and void, it being in contravention of law. No agreement could be based upon it, and it was incapable of ratification. (Code of 1808, Art. 11, 12 ; 3 An. 329 ; Hunt v. Robinson, 1 Tex. R., 748 ; Desmuke v. Griffin, 10 Id. 113.) For the distinction between void and voidable acts, see Cummings v. Powell, 8 Tex. R. 85.

2nd. Had Soye survived his wife, and a deed similar to the one made to plaintiffs, been made to him, it could not have been made to relate back to the former void contract ; it would have been his separate property and not property of the community. Or had a bankruptcy intervened between the execution of the void contract, and the execution of a deed to John Soye, similar in every respect to that made to the plaintiffs, the land could not have been claimed by the creditors as part of his former estate.

It is contended by appellees, that though the bond is in law absolutely null, and constitutes no legal consideration for a new conveyance, it is a moral consideration, and as such entitled to respect. This is something new in legal ethics. To state the question is to answer it. Can a contract, in absolute violation of positive law, constitute a moral consideration ?

The sale from Delgado to plaintiffs stands entirely discon-
nected from any former transaction, and vests in them an ab-
solute fee simple title; it is on good and full consideration;
$500 was then as much as the land was worth, and we are not
driven behind the deed to seek a consideration to sustain it.
It was for the consideration named in the deed and no other.
No mention is made of the former transaction. Nothing in the
deed connects it with the void bond, nor is there any proof to
show a connexion between the deed to the four grantees named
in it, and the former void contract with John Soye.

The deed is absolute in its terms, and conveys the property
in the following language : " The said party of the first part
" has granted, bargained and sold, and by these presents does
" grant, bargain, sell, convey and deliver unto Rowland Soye,
" John Soye, Elizabeth Soye and Ellen Soye, parties of the
" second part, one league and labor of land," &c.   And in the
habendum thus :   " To have and to hold the land described as
aforesaid unto them, the said party of the second part, their
heirs and assigns forever."

There is also a clause of full warranty to these parties and
their heirs.   It is therefore obvious that the consideration
named in the deed is the true one.   Had the eighty dollars
formerly paid by John Soye at the time of the execution of the
bond, been the moving consideration, the grantor would not by
his deed with warranty have bound himself for the sum of five
hundred dollars.

There is no privity shown either by the deed or otherwise,
between John Soye's estate and these grantees, or between these
grantees and the administrator, nor is there a vestige of proof
either in the administrator's accounts or elsewhere, that the
$500 was paid by or came out of John Soye's estate ; nor any
proof any where to be found, from which a trust in favor of
the estate could be inferred.

3rd. The deed from McMullen to Van Ness, under whom
defendants claimed, recites the deed to plaintiffs as well as the

recording of the same ; they are therefore estopped from de-
nying their knowledge of the deed and its contents. They are
not innocent purchasers under the administrator's sale.

Again, defendants have no title or pretence of title, except
such as they claim under the conveyance from Delgado to the
plaintiffs. They deduce title down to themselves from that
deed. It is therefore *prima facie* evidence as against them
of every recital which it contains, and they can only overturn
these recitals by proof that they are untrue, and that some-
thing else was designed between the parties to the deed, than
appears upon its face.

This is our case as made out by the record. Let us see how
our views of the law applicable, agree with the charges of the
Court below. And though we in our brief only refer to the
especial charges on which we rely to operate a reversal, we
would call the attention of the Court to the entire charge,
that they may see how it was calculated to act upon the minds
of the jury.

The 8th charge takes it for granted that the land in dis-
pute was " claimed by the intestate's estate, and goes on in
effect to state that the property was conveyed to the grantees
in right of their deceased father ; this charge also intimates
that notwithstanding the recitals in the deed, the burthen is on
the grantees to show by " facts" what the consideration was.
Of the 9th, we will speak when we come to the 7th instruction
asked for by plaintiffs and refused.

The first instruction asked by plaintiffs is given with an ad
dition which renders it nugatory, which is not warranted by
the facts or the law of the case.

The fourth instruction asked for by plaintiffs, and refused,
is the well established law of estoppel, its refusal simply de-
prives the plaintiffs of the recitals in the deeds, though there
is no evidence in the case even tending to cast a doubt upon
them.

On what ground the sixth charge was refused, it is difficult

to perceive ; it is certainly the law ; nor can its refusal be justified on the ground that it is inapplicable to the case.

By the ninth instruction given, and the refusal of the seventh instruction asked, the Judge in effect took the testimony in the case from before the jury, and decided the cause against the plaintiffs.

*I. A. & G. W. Paschal*, also for appellants.

*Denison* and *Newton*, for appellees.

WHEELER, J.   The plaintiffs, to maintain their action, rely on the conveyance, from the original grantee of the government, Delgado, to themselves, of the 6th of October, 1838. They insist that the deed vested in them the title, exclusive of the rights of creditors of their ancestor ; that the land conveyed constituted no part of his estate, and consequently was not subject to sale by his administrator.   And to support this view, they rely upon the evidence afforded by the face of the deed itself : the fact that it conveys the land to the plaintiffs by name, for a consideration therein expressed.

But it is seen that, in stating the parties to the deed, the plaintiffs, though named as the grantees, are described as the " heirs and legal representatives of John Soye, deceased." The conveyance, being made to them as such, must be deemed *prima facie* evidence that the consideration moved from their ancestor : else why convey to them as his heirs and legal representatives ?   The manifest intention was, not to convey to them in their own right, irrespective of their ancestor, whom they represented, but in their right in their representative character, as the heirs and representatives of their deceased father.   The consequence is, that they took the estate, as they did whatever other estate they inherited from their ancestor, subject to the payment of his debts.   It became assets in the hands of his administrator.

XVIII             7

Such is the *prima facie* conclusion to be deduced from the face of the deed. But it does not rest alone on the proper construction of the instrument. It is in proof that, in December, 1833, the plaintiff's grantor executed to their ancestor an obligation, showing a sale to him of the land, for a consideration acknowledged to have been received, and agreeing, when the legal inhibition should cease, to make to him a title, or in case of his death, to make the title to his widow and heirs. It is unnecessary now to discuss the question whether this agreement was, to all intents and purposes, null ; or was only in so far inoperative and ineffectual as that it could not be enforced unless it was validated by the grantee after the removal of the legal impediment ; or unless there were supervening equities which had the effect to make good the title in the purchaser. Whatever theoretical opinion may be entertained of the question, it cannot be denied that, practically, the latter view of it has been maintained. (1 Tex. R. 748 ; Hunt v. Turner, 9 Tex. R. 385 ; Box v. Lawrence, 14 Id. 545.) But though it be utterly void, the agreement is, nevertheless, a fact, which may be looked to, to ascertain the motive and consideration, which actuated the grantor to make the subsequent conveyance to the plaintiffs. It is equally significant of the intention of the party, as if it had been operative, and effectual to bind him to its performance.

It is further inferable that the consideration moved from the ancestor, from the fact, that the plaintiffs were not of sufficient age to contract and make purchases ; and that the conveyance was intended to operate in favor of the estate, from the fact that it was so treated by the administrator at the time, and by the plaintiffs themselves until the bringing of this suit ; as appears by the petition in the former suit instituted by them for the land in question. That it was so made and intended in fact, is evident, as well from the face of the deed itself, which was matter of legal construction by the Court, as from the other facts referred to, which were evidence for the

jury. There being nothing in the evidence to countervail the prima facie presumption, arising from the face of the deed, that the conveyance was virtually and beneficially for the estate, but the contrary, there was no error in the charge of the Court upon that subject.

The objections to the validity of the administrator's sale, and the title derived by the defendants under it, have been considered and answered in former decisions, to which it will suffice to refer for their disposition in the present case. (Poor v. Boyce, 12 Tex. R. 309 ; Howard v. Bennett, 13 Tex. R. 309 ; Dancy v. Stricklinge, 15 Tex. R. 557 ; Burditt v. Silsbee, Id. 604.)

There is an interesting decision, lately made by the Supreme Court of Georgia, upon the effect which ought to be given to the proceedings of Probate Courts in the sale of the estates of deceased persons, to which we have been referred by the counsel for the appellants in another case now before the Court. It is admitted that, in that case, the Court went quite as far as this Court has gone in maintaining the doctrines which support the titles of fair purchasers at those sales. In a very learned and elaborate opinion by Judge Lumpkin, the legal propriety and necessity of upholding these titles, fairly acquired, are strongly insisted upon, and maintained upon authority and reasons which seem unanswerable. (Tucker v. Haris, 13 Ga. R. 1.) The principal objection to the sale in the present case, is, that it does not appear that the term of administration was continued down to the period of the sale. The administrator, however, continued to act under the sanction of the Probate Court ; and there is more than the usual apparent regularity in the proceedings, in other respects. That the absence in the record, of any evidence of the extension by the Court of the term of administration, does not invalidate the title of the purchaser, has been fully settled in the cases referred to.

It is further objected to the title of the purchaser at the administrator's sale, that there does not appear to have been any

administration taken upon the estate of the wife of John Soye. Both departed this life about the same time. The debts for which the property was sold were community debts. Such, at least, is the presumption ; and . we are of opinion that there was no necessity of two administrations upon the same property, to pay debts, for which it must have been equally liable, in the hands of the administrator of either or both of the decedents. (Jones v. Jones, 15 Tex. R; 143 ; Berry v. Young, Id. 369.)

It is unnecessary to revise the several rulings of the Court upon instructions to the jury ; for the reason that, under the evidence and law of the case, they could not legally have returned a different verdict. There is no error in the judgment, and it is affirmed.

Judgment affirmed.