POLLIE T. CARLTON ET AL. v. CHARLES GOEBLER.

No. 928. Decided October 22, 1900.

**1. Community Property—Sale for Community Debt.**

Community property may be sold for the payment of community debts by the surviving husband, or under execution on judgment against him for a community debt, or by his administrator, whether the wife be living or dead. (P. 97.)

**2. Same—Independent Executor.**

The appointment of an independent executor, without other provision either enlarging or restricting his powers, confers upon him authority to do, without an order of court, every act which an administrator could perform with such order; hence he may sell community property to pay community debts without an order. (P. 97.)

**3. Same—Will Construed—Powers of Executor.**

A will by a surviving husband appointing an independent executor with power to manage the estate of the testator, does not restrict such executor's authority to the administration of the testator's separate estate; his estate includes his right to apply the community property to the payment of community debts. Especially is

this the case where the estate is insolvent and the executor is directed to manage it to the best advantage for the benefit of creditors. (Pp. 97-99.)

4.  Same.

A will which provided that an independent executor should manage the testator's estate to the best advantage for the benefit of creditors, did not deny to, but impliedly conferred upon the executor a power to sell for the payment of debts. Blanton v. Mayes, 54 Texas, 422, distinguished. (P. 99.)

Questions certified from the Court of Civil Appeals for the First District, in an appeal from De Witt County.

*Bailey & Harris, Walton & Hill,* and *W. M. Walton,* for appellants.— Unless the deed from C. S. West, as the independent executor for R. J. Townes, together with the will of the latter, under all the circumstances and legitimate facts appertaining thereto, passed the title to Pease and Hancock, Pollie T. Carlton should have recovered the interest that she inherited from her mother, and neither the will of R. J. Townes nor the deed of C. S. West as executor, nor both together, could divest the interest inherited by Pollie T. Carlton from her mother, and to so hold was error in the trial court. The estate was community property. The title descended instanter to the children on death of the mother in 1863. Pasch. Dig., art. 4642. Law in force when descent was cast: Veramendi v. Hutchins, 48 Texas, 550. But subject to debts: Pasch. Dig., art. 5498. Once vested, it can not be divested, save by due process of law under administration sale by survivor to pay community debts, or by suit against the heirs to recover the property. Veramendi v. Hutchins, supra, and cases cited; Stone v. Ellis, 69 Texas, 327, and authorities cited.

At the time of the death of R. J. Townes the estate of· Pattie E. Townes was still open to administration, and the only due processes of law for subjecting her estate to the payment of debts was by administration on her estate, the survivor of the community being dead. Brown v. Seaman, 65 Texas, 628.

The words of Townes' will, "He will take charge of my estate and manage it for the best advantage for the benefit of my creditors," do not, first, vest authority in the executor to sell realty. Roosevelt v. Heirs of Fulton, 7 Cowen, N. Y., 81; Anderson's Dic., word "manage;" Mitchell v. Balderas, 2 Texas U. C., 20; Reese v. Medlock, 27 Texas, 123; Harrington v. Moore, 21 Texas, 546; Berry v. Harnage, 39 Texas, 651; Dearing v. Lightfoot, 16 Ala., 33; McCown v. Terrell, 40 S. W. Rep., 57. Second, or if authority is vested, it is confined to the testator's half of the community. Mealy v. Lipp, 40 S. W. Rep., 825.

We do not pretend that if there were community debts the heirs of Mrs. Townes could have taken her interest free from such debts, if the proper proceedings had been taken to subject the already descended property thereto; but such has not been the case. There was no administration of her estate. The law put the title in the children, and they have never been divested of it. All debts by operation of law

are now barred. Howard v. Johnson, 69 Texas, 657; Cone v. Crum, 52 Texas, 351; Flint on Trustees, sec. 196.

R. J. Townes' power and authority as survivor to sell the community property to pay community debts was only the discretionary power of an ordinary trustee. Townes was a trustee and could not, by will or otherwise, delegate his power as such to another to sell the community property to pay community debts, and to hold that he could was error in the trial court, which is a proposition. Townes was a trustee. Pressler v. Wilkie, 84 Texas, 344; Davis v. McCartney, 64 Texas, 584; Leatherwood v. Arnold, 66 Texas, 414. A trustee can not delegate his powers. Terrell v. McCown, 43 S. W. Rep., 2; Smith v. Swan, 22 S. W. Rep., 247; Fuller v. O'Neil, 69 Texas, 349, and authorities cited in opinion; Crafts v. Daugherty, 69 Texas, 477.

*A. B. Davidson* and *Fiset & Miller*, for appellees.—Under the will the executor had the power to sell. Carleton v. Hausler, 49 S. W. Rep., 118; Danish v. Disbrow, 51 Texas, 235; Orr v. O'Brien, 55 Texas, 150; Faulk v. Dashiell, 62 Texas, 642; Hill on Trustees, 2 Am. ed., 499 and 500 (*p. 355).

An independent executor without express authority to do so has authority to sell. McDonough v. Cross, 40 Texas, 280; Howard v. Johnson, 69 Texas, 659; Holmes v. Johns, 56 Texas, 51; Cooper v. Horner, 62 Texas, 356; Anderson v. Stockdale, 62 Texas, 54-61; Blanton v. Mayes, 58 Texas, 429; Terrell v. McCown, 43 S. W. Rep., 10.

The husband has a right to administer the community property to pay community debts, and the administrator of the wife's estate can not prevent it. Moody v. Smoot, 78 Texas, 119.

The sale of land to pay a claim which is a community debt made against the husband's estate of community property is good, and the heirs of the mother can not recover the land. Jones v. Jones, 15 Texas, 143; Carter v. Conner, 60 Texas, 53; Hill v. Osborne, 60 Texas, 390; Wilson v. Helms, 59 Texas, 682; Roy v. Whittaker, 49 S. W. Rep., 367; Murchison v. White, 54 Texas, 86; Simmons v. Blanchard, 46 Texas, 267; Soye v. McCallister, 18 Texas, 99; Berry v. Young, 15 Texas, 369; Moody v. Butler, 63 Texas, 210.

A sale by the executor of the husband passes the title of the dead wife and her heirs. Same authorities; also Halbert v. Carroll, 25 S. W. Rep., 1102; Moore v. Wagner, 2 Posey U. C., 531.

GAINES, CHIEF JUSTICE.—Together with the preliminary statement, the following questions have been certified for our decision by the Court of Civil Appeals of the First District:

"This suit was brought by appellants in trespass to try title to recover of Charles Goebler a tract of land situated in De Witt County. Mrs. S. E. Hancock and Mrs. L. C. Pease were made parties at the instance of Goebler, they being the sole legal representatives of his

warrantors. A trial resulted in a judgment for appellees, from which Pollie T. Carlton and her husband have appealed.

"The agreed facts are in substance as follows:

"R. J. and Pattie E. Townes were husband and wife and acquired the land in controversy on the 6th day of March, 1861, the deed being direct to the husband and not disclosing the community character of the property. The land was their community property.

"On the — day of August, 1863, Pattie E. Townes died intestate, leaving five children surviving her. These children were the issue of her marriage with R. J. Townes, and Pollie T. Carlton is the only one who is not precluded from recovery in this cause by reason of the bar of limitation.

"At the death of Pattie E. Townes the community estate was insolvent. Her husband, R. J. Townes, who also survived her, did not qualify as survivor, nor was any administration taken out on her estate. Neither did he sell any of the community property for the payment of community debts or for any other purpose. He remained in possession and control of the community property until his death, which occurred on the — day of December, 1865. He died testate, leaving the following will:

"'I, Robt. J. Townes, do make this my last will, revoking all others.

"'First. I appoint Everett T. Eggleston guardian of my children during the longest time the law gives me authority to do so.

"'Second. I appoint Charles West, of Austin, executor of this my last will; he is not required to give bond or security and the county court is restricted from having any control over the said executor or of my estate. He will take charge of the estate and manage it to the best advantage for the benefit of my creditors.'

"This will was duly probated and the executor promptly qualified. At the death of R. J. Townes, his estate, including the community estate left by his wife, was insolvent. In the years 1871 and 1872, the executor, for the purpose of paying valid and existing community debts, sold at a fair price all the community estate, including that left by Townes as well as that left by his deceased wife.

"The land in controversy was included in these sales and was bought by Hancock and Pease, from whom appellee Goebler purchased them for value under warranty deeds. Under this purchase, Goebler took possession in 1880 and has held same ever since, paying all taxes thereon. He had no actual knowledge that the land was the community property of Townes and wife, and did not know whether Mrs. Townes was dead or alive at the date of his purchase.

"All community debts against the estate of Townes and wife were barred at the institution of this suit.

"Under this state of facts, Pollie T. Carlton insists that the sale by the independent executor passed no title to her mother's community interest and that she is entitled to a judgment for her undivided interest therein.

"We respectfully certify for your decision the following questions:

"First.   Did the sale of the community property by the independent executor at a fair price, for the payment of community debts, pass to the purchaser title to the community interest of the deceased wife?

"Second.   Was the clause in the will of Townes providing for his minor children, taken in connection with the date of his acquisition of the property, sufficient to charge the purchaser from the executor with notice of the family relations of decedent and the community character of the property?"

That a surviving husband has the power to sell the community property of himself and his deceased wife for the payment of community debts, has long been the settled law.   It is also settled, and by a long line of decisions, that a sale of community property under execution upon a judgment against a surviving husband for a community debt will pass the title to the interest of the deceased wife's heirs in the property.

It has also been long determined that the administrator of the estate of a deceased husband may, under the order of the probate court, sell and pass title to community property of the estate for the purpose of paying the debts of the community; and this, whether the wife be living or dead.   Soye v. McCallister, 18 Texas, 80; Simmons v. Blanchard, 46 Texas, 266; Murchison v. White, 54 Texas, 78.

It follows from the last proposition that if Judge West had been appointed merely administrator of Townes' estate and had procured an order of court for the sale of the property in question for the purpose of paying the debts of the community and had sold the land in question in pursuance of such order, the interest of the wife's heirs would have passed by the sale.

We are therefore of the opinion that the first question should be answered in the affirmative, unless it should be held either that an independent executor has less power than an administrator, or that by the terms of the will in question it was the intention of the testator either to confine the authority of the executor to his own proper estate, or to deny him the power to sell.

We will dispose of these three questions in the order in which they have been stated.   As to the first, we think that the appointment of an executor with a direction in the will that "no other action shall be had in county court in relation to the settlement of his estate than the probating and recording of his will and the return of an inventory," etc., without other provisions either enlarging or restricting his powers, confers upon him authority to do, without an order of court, every act which an administrator could perform with such order.   Such is the established rule under our statute; and hence if an administrator, by virtue of an order of the county court, can sell community property to pay community debts, no reason suggests itself why an independent executor can not do the same without an order.

The second question is more difficult.   Does the appointment of an

independent executor under a will empowering him to manage the estate of the testator, confer upon him the power to administer the community estate of the testator and his deceased wife and to sell the same for the purpose of paying the debts of the community? Or does the use of the words, "my estate," restrict the executor's authority to the administration of the testator's separate estate and of his half of the community property? The rights of the surviving husband and the heirs of his deceased wife in the common property are equal, after the debts are paid. However, until this is accomplished, it is in a sense his property for the purpose of paying the common debts. His right to administer the property after his death goes to his administrator. This is even the right of the administrator of the deceased husband when the wife survives. Moody v. Smoot, 78 Texas, 119. Therefore it is but reasonable to conclude that when the surviving husband mentions his estate in his will, he means the entire estate,—not only his separate estate and his half of the community property, but also his right to apply the community to the payment of community debts. This is an important right to him, for the reason that unless the community property be applied to the community debts, the burden of the latter will fall upon his separate estate, although they are primarily a charge upon the community. That the testator by this language did not intend to restrict the power of his executor over the community is further shown, as we think, by the provision that the latter shall "take charge of the estate and manage it to the best advantage for the benefit of my creditors." The estate was insolvent, as this provision would indicate. There is no provision for his heirs or legatees with regard to the property, because he saw there would be nothing coming to them. The community was insolvent, so that it was apparent that the community debts were sufficient to absorb the common estate. The creditors holding community debts were his creditors in the full sense of the terms. Therefore, when the testator directed that his estate should be managed for the benefit of his creditors, he must have meant all his creditors. It follows, therefore, as we think, that by "my estate" he must have meant to include the entire community estate, since his creditors had the right to look to the whole of it for the satisfaction of their demands. It may be doubted whether the law would tolerate an administration of one-half of the community while there were valid debts against the whole still unsatisfied. It is unreasonable to suppose that the executor contemplated such a course.

The relation of husband and wife, with regard to their common property, has been frequently assimilated to an ordinary commercial partnership. It seems to be the recognized rule of the common law that when a surviving partner dies, not having wound up the partnership business, his executor succeeds to the administration of the partnership estate. In Dayton v. Bartlett, 38 Ohio State, 357, the court, in speaking of the executors of a surviving partner, say: "The executors named in his will and appointed by the court to settle his estate,

had, by becoming such executors, cast upon them the incidental duty of winding up the partnership of which their testator was the survivor." And again in another connection, the court use this language: "Upon the death of Jordan, the partnership property did not become that of his surviving partner burdened with the trust, but his death dissolved the partnership, and the ownership of the property was that of tenants in common, with the sole right of possession in the survivor to settle up the business. In doing so, he was a trustee of the firm. Upon his death, the law cast that duty upon his personal representative, not as owner of the property, but as a trustee in possession, acting for the estates of all the deceased partners." The point decided was that the executors were entitled to compensation for administering the partnership estate. The English courts have made a different ruling upon the point, but they seem to have recognized the right of the executors of a surviving partner to wind up the partnership business and to pay the firm debts. Burden v. Burden, 1 Vesey & B., 170; Stocken v. Dawson, 6 Beav., 371. This seems to be in consonance with our rule as to the power of the administrator of a surviving husband.

The next question is, did the testator, by providing that his executor should "manage" his "estate to the best advantage for the benefit of" his "creditors," intend to divest him of the power to sell the property for the payment of his debts? It seems to us that to state the affirmative as a proposition, is to refute it. The creditors had the right to have it sold in payment of their debts, and the testator must have known that he could not debar them of that right. Any attempt to restrict a sale of the property would have been nugatory and could not have been enforced. But the estate being insolvent and that insolvency being impliedly recognized in the will itself, we fail to see what advantageous management on the part of the executor for the benefit of his creditors the testator could have meant, except that he should take care of the property and sell it in such a manner and at such favorable opportunity or opportunities as would yield the most money for the payment of his debts. It is true that in the case of Blanton v. Mayes, 58 Texas, 422, it was held that a power given to executors to "manage and control" an estate did not authorize them to sell the property unless possibly for the payment of debts. In that case the property was to be held together and managed for the benefit of the legatees. In this case, the management contemplated being for the benefit of the creditors only, it is inconceivable that the testator could have intended to deprive the executor of the authority to make sales and at the same time have made the executorship independent of the control of the court and thereby enabled the creditors to sacrifice it by a forced sale under execution.

We answer the first question certified in the affirmative, and deem it unnecessary to answer the other.