**COCKRELL v. LOVEJOY et al.**
No. 2604.

Court of Civil Appeals of Texas. El Paso.
Dec. 17, 1931.

Rehearing Denied Jan. 7, 1932.

Stewart & De Lange, of Houston, for appellant.

A. D. Dyess, of Houston, for appellees.

HIGGINS, J.

This is a suit by Mrs. Mary C. Lovejoy, surviving wife of John Lovejoy, deceased, and the residuary beneficiaries of the will of said deceased to recover an undivided one-half interest in a five-acre tract of land in Chambers county, and certain bonus money, rents, and royalty accruing under an oil lease upon such land.

The defendant, Cockrell, answered to the merits and reconvened for title to the land, bonus, rents, and royalty.

At the conclusion of the evidence, the court ruled there was no issue of fact raised by the evidence. Whereupon the court withdrew the case from the jury and rendered judgment in Mrs. Lovejoy's favor for an undivided one-fourth interest in the land, bonus, rents, and royalty, and in favor of Cockrell for the other one-fourth interest therein; the residuary beneficiaries being denied any relief. From this judgment, Cockrell appeals.

At the time of his death, Lovejoy owned the one-half interest in controversy. The record title was in R. W. Houk, a former law partner of the deceased. Houk held the title in trust for Lovejoy. It was community property. It was not for any reason exempt from liability for payment of the community debts of the deceased.

Lovejoy died October 4, 1916, leaving a holographic will dated January 31, 1916. Omitting formal parts and a codicil which has no bearing upon the question at issue, the will reads:

"1. I direct that all my just debts and funeral charges by my executor hereinafter named be paid out of my estate as soon after my decease as shall by him be found convenient.

"2. I give and bequeath to my wife, Mary C. Lovejoy, all my household goods and furniture. All the property which I own is community and my wife being one-half owner of the community estate I am only disposing of my community interest in our estate.

"3. I give and bequeath to my sons, Bowie R. Lovejoy and John Lovejoy, Jr., One Hundred ($100.00) Dollars each.

"4. All the rest and residue of my estate, of which I shall die seized and possessed or to which I may be entitled at the time of my decease, I give and bequeath to my daughters, Edith Lovejoy and Cathryne Lovejoy, to be equally divided between them share and share alike.

"5. I nominate and appoint my friend, Presley K. Ewing, to be executor of my will and direct that no security be required of him as executor.

"6. It is my will that no action be had in the county court in the administration of my estate other than to prove and record this will and to return an inventory and appraisement of my estate and list of claims.

"7. I authorize and empower my said executor to sell and dispose of any portion of my estate, real or personal, at public or private sale, and in the manner that may seem to him best, for the purpose of paying my just debts and the legacies herein bequeathed."

The will was admitted to probate and Presley K. Ewing qualified as independent executor on November 10, 1916, and entered upon the discharge of his duties.

At the time of his death, Lovejoy's estate was heavily in debt and perhaps insolvent. This condition has continued at all times since his death.

For the purpose of relieving himself of his trust and at the request of the executor, Houk, by deed dated March 31, 1924, conveyed the one-half interest in the land to Ewing as the independent executor of the estate of John Lovejoy, deceased.

For the purpose of paying community debts, the executor, after notice, sold this and other land at public sale on May 6, 1924. The land in question was sold to Cockrell, to whom the executor executed a deed in due form. The price paid was not inadequate, but was a reasonable price. The sale and purchase was made in good faith by the executor and purchaser.

It is the theory of Mrs. Lovejoy that, under the terms of her husband's will, the executor was authorized only to sell the community interest of the deceased; therefore, the sale and conveyance to Cockrell did not pass the title to her community interest in the land. This theory has been presented most ably by her counsel in the brief filed and upon oral argument.

█ Community property is subject to the payment of community debts and to administration for such purpose. Sales of such property, for the payment of community debts, by an administrator of a deceased husband, under court authority, or by an independent executor of a dead husband, passes the title, not only of the deceased husband, but the surviving wife's also. An independent executor can do whatever an administrator could do under order of the probate court. These are well-settled rules requiring no citation of authority. Appellee makes no point in that respect, but it is well to state the same in considering the proper interpretation to be placed upon the will in question. The record discloses that Lovejoy was a lawyer.

It is stressed by appellee that the will upon its face discloses the testator recognized that all of his estate was community, and that he did not intend to dispose of any of such estate except his community interest, as is shown by the second paragraph of the will. But the question here is not whether Lovejoy attempted to dispose of his wife's interest. It is clear he did not. The controlling question is whether the authority of the independent executor, in making sales for the purpose of paying community debts, was by the terms of the will limited to the testator's community interest.

█ It must be conceded that the purpose of the testator is not clear when in the second paragraph of the will he stated that all of his property was community, and he was only disposing of his community interest; for the legal presumption was that all property acquired since the testator's marriage to appellee in 1890 belonged to the community estate (article 4619, R. S.), and it is never assumed that a testator intended to dispose of property he did not own unless the language used fairly admits of no other construction. Avery v. Johnson, 108 Tex. 294, 192 S. W. 542; Sailer v. Furche (Tex. Com. App.) 22 S.W.(2d) 1065.

It may be that Lovejoy intended merely to make absolute the presumption as to the community status of his property and to place beyond question the fact that he had no intention of attempting to dispose of his wife's share of the property. But whatever the purpose of the testator was in this connection, the language used in the second paragraph does not control the question here at issue.

A case very much in point is Carlton v. Goebler, 94 Tex. 93, 58 S. W. 829, 830. In that case R. J. Townes and wife acquired certain community land. The wife died intestate, leaving children. Thereafter the husband died, leaving community debts. The estate was insolvent. The will provided:

"I appoint Charles West, of Austin, executor of this my last will; he is not required to give bond or security and the county court is restricted from having any control over the said executor or of my estate. He will take charge of the estate and manage it to the best advantage for the benefit of my creditors."

Community land was sold by the executor for the purpose of paying community debts. Later, suit to recover the community interest of the wife was brought by her heirs. The case reached the Supreme Court upon certified question. The first question was: "Did the sale of the community property by the independent executor at a fair price, for the payment of community debts, pass to the purchaser title to the community interest of the deceased wife?" Speaking for the court, Chief Justice Gaines, in returning an affirmative answer to the question, said:

"That a surviving husband has the power to sell the community property of himself and his deceased wife for the payment of community debts has long been the settled law. It is also settled, and by a long line of decisions, that a sale of community prop-

erty under execution, upon a judgment against a surviving husband for a community debt, will pass the title to the interest of the deceased wife's heirs in the property.

"It has also been long determined that the administrator of the estate of a deceased husband may, under the order of the probate court, sell and pass title to community property of the estate for the purpose of paying the debts of the community; and this, whether the wife be living or dead. Soye v. McCallister, 18 Tex. 80 [67 Am. Dec. 689]; Simmons v. Blanchard, 46 Tex. 266; Murchison v. White, 54 Tex. 78.

"It follows from the last proposition that if Judge West had been appointed merely administrator of Townes' estate, and had procured an order of court for the sale of the property in question for the purpose of paying the debts of the community, and had sold the land in question in pursuance of such order, the interest of the wife's heirs would have passed by the sale.

"We are therefore of the opinion that the first question should be answered in the affirmative, unless it should be held either that an independent executor has less power than an administrator, or that by the terms of the will in question it was the intention of the testator either to confine the authority of the executor to his own proper estate, or to deny him the power to sell.

"We will dispose of these three questions in the order in which they have been stated. As to the first, we think that the appointment of an executor, with a direction in the will that 'no other action shall be had in county court in relation to the settlement of his estate than the probating and recording of his will and the return of an inventory,' etc., without other provisions either enlarging or restricting his powers, confers upon him authority to do, without an order of court, every act which an administrator could perform with such order. Such is the established rule under our statute; and hence if an administrator, by virtue of an order of the county clerk, can sell community property to pay community debts, no reason suggests itself why an independent executor cannot do the same without an order.

"The second question is more difficult. Does the appointment of an independent executor, under a will empowering him to manage the estate of the testator, confer upon him the power to administer the community estate of the testator and his deceased wife, and to sell the same for the purpose of paying the debts of the community? Or does the use of the words 'my estate' restrict the executor's authority to the administration of the testator's separate estate and of his half of the community property? The rights of the surviving husband and the heirs of his deceased wife in the common property are equal, after the debts are paid. However, until this is accomplished, it is in a sense his property, for the purpose of paying the common debts. His right to administer the property after his death goes to his administrator. This is even the right of the administrator of the deceased husband when the wife survives. Moody v. Smoot, 78 Tex. 119, 14 S. W. 285. Therefore it is but reasonable to conclude that, when the surviving husband mentions his estate in his will, he means the entire estate—not only his separate estate and his half of the community property, but also his right to apply the community to the payment of community debts. This is an important right to him, for the reason that, unless the community property be applied to the community debts, the burden of the latter will fall upon his separate estate, although they are primarily a charge upon the community. That the testator by this language did not intend to restrict the power of his executor over the community is further shown, as we think, by the provision that the latter shall 'take charge of the estate and manage it to the best advantage for the benefit of my creditors.' The estate was insolvent, as this provision would indicate. There is no provision for his heirs or legatees with regard to the property, because he saw there would be nothing coming to them. The community was insolvent, so that it was apparent that the community debts were sufficient to absorb the common estate. The creditors holding community debts were his creditors in the full sense of the term. Therefore, when the testator directed that his estate should be managed for the benefit of his creditors, he must have meant all his creditors. It follows, therefore, as we think, that by 'my estate' he must have meant to include the entire community estate, since his creditors had the right to look to the whole of it for the satisfaction of their demands. It may be doubted whether the law would tolerate an administration of one-half of the community while there were valid debts against the whole still unsatisfied. It is unreasonable to suppose that the executor contemplated such a course. * * *

"The next question is, did the testator, by providing that his executor should 'manage' his 'estate to the best advantage for the benefit of' his 'creditors,' intend to divest him of the power to sell the property for the payment of his debts? It seems to us that to state the affirmative as a proposition is to refute it. The creditors had the right to have it sold in payment of their debts, and the testator must have known that he could not debar them of that right. Any attempt to restrict a sale of the property would have been nugatory, and could not have been enforced. But the estate being insolvent, and that insolvency being impliedly recognized in

the will itself, we fail to see what advantageous management on the part of the executor for the benefit of his creditors the testator could have meant, except that he should take care of the property and sell it in such a manner, and at such favorable opportunity or opportunities, as would yield the most money for the payment of his debts. It is true that in the case of Blanton v. Mayes, 58 Tex. 422, it was held that a power given to executors to 'manage and control' an estate did not authorize them to sell the property, unless, possibly, for the payment of debts. In that case the property was to be held together and managed for the benefit of the legatees. In this case, the management contemplated being for the benefit of the creditors only, it is inconceivable that the testator could have intended to deprive the executor of the authority to make sales, and at the same time have made the executorship independent of the control of the court, and thereby enable the creditors to sacrifice it by a forced sale under execution."

█ It seems to us the reasoning of this opinion is decisive of the view that Lovejoy, by the use of the words "my estate," in various portions of his will, other than the second paragraph, did not limit the authority of his executor in the administration of the estate and making sales for the purpose of paying debts to the testator's community interest. Lovejoy knew that his estate was heavily indebted. Whether he regarded it as insolvent is not controlling. He probably did not. In either event, he knew the community estate of himself and wife was subject to the payment of those debts. In the first paragraph of his will he directed that his just debts be paid by his executor. He knew that he could not, if he would, relieve the interest of his wife from liability for such payment. Any such attempt would have been obviously ineffective, as Lovejoy must have known.

There can be no doubt that Lovejoy intended Ewing should be his independent executor and administer his estate free from control by the probate court, and he expressly conferred the power of sale for the purpose of paying debts and legacies. As to legacies, this power was ineffective in so far as the wife's estate was concerned.

How could the executor discharge the duty incumbent upon him imposed by law and the terms of the will, to pay the debts of the testator? Having in mind the financial condition of the estate, it is obvious he could discharge that duty in no way except by selling the community estate and passing the title of both deceased and the surviving wife. Lovejoy died just nine months and four days after he executed his will, and there is nothing to indicate any change in his financial condition between the date of the will and his death. He therefore must have known the necessity of sales to pay his debts, which would later confront his executor.

We are therefore of the opinion that, construing the will as a whole, and in the light of the surrounding facts and circumstances, it is not to be regarded as withdrawing or attempting to withdraw from administration the community interest of the wife, or as a limitation upon the power of the executor to sell, for the purpose of paying debts, the community estate of both spouses.

It is also stressed by appellee that in the seventh paragraph of the will the testator only authorized his executor to "dispose of any portion of my estate." It has been heretofore indicated that we do not regard the testator as having used the words "my estate" in the limited sense contended for by appellee.

But if the express authority to sell be thus limited, it is unimportant, in view of the undisputed fact that the sale was to pay community debts. In any event, Ewing was an independent executor. By virtue of that fact and our statutory provisions relating to independent executors, he was authorized to sell and pass the entire community title to the land for the purpose of paying debts. Since the undisputed evidence shows such debts and necessity to sell, it is unimportant whether or not the executor was given express authority to sell by the will. Terrell v. McCown, 91 Tex. 231, 43 S. W. 2.

To give effect to appellees' theory in this case would have presented to the executor a situation of impossible contradictions. He was the independent executor of Lovejoy's estate, directed to pay all just debts and to administer the estate without any action in the probate court except to probate and record the will, etc. There were debts and it was necessary to sell the community land, but he was without authority to sell the wife's interest. Administration upon her estate could not be had in the probate court, for she was not dead. Such court could not properly assume jurisdiction of the wife's interest as a part of Lovejoy's estate, subject to administration and payment of his debts, because the will forbade any action by the probate court in the administration of his estate. In such a situation, the executor would be powerless to discharge his duties. It would seem that it would be necessary to let creditors sue, obtain judgments, and sell under execution. The race among the creditors would go to the swift and proper distribution of the proceeds of the estate among them, would be impossible.

The judgment will be reversed and here rendered that the plaintiffs take nothing; that Cockrell recover of plaintiffs the undivided one-half interest in controversy and all bonuses and royalties which have been placed on deposit with the Houston National Bank, or

which may hereafter become due and payable by reason of the ownership of said one-half interest in the land.

Reversed and rendered.

## On Rehearing.

It is asserted the deed from the executor to appellee did not purport to convey the interest of Mrs. Lovejoy in the land and, upon its face, is insufficient for that purpose.

The material portions of the deed read:

"Whereas, by virtue of the authority vested in me by the terms of and as Independent Executor under the last will of John Lovejoy, deceased, * * * I, Presley K. Ewing, as Independent Executor aforesaid, did upon the 8th day of May, 1924, * * * sell the property hereinafter described at public outcry * * *; and whereas, at the said sale the said property was struck off to E. Cockrell for the total sum of * * * (2) Undivided one-half interest in and to five (5) acres of land out of the Daniel J. Lawrence 350-acre home tract in the Henry Griffith League in Chambers County, Texas, described in deed from D. J. Lawrence et ux to R. W. Houk of July 16, 1905, recorded in Vol. X, page 289, Deed Records of said County to which reference is thereby made for certainty, for the sum of Twenty-seven Dollars and Fifty Cents ($27.50). * * *

"Now therefore, in consideration and by virtue of the premises aforesaid and of the payment of the said sum of One Hundred and Forty ($140.) Dollars, the receipt of which is hereby acknowledged, I, Presley K. Ewing of the City of Houston, as Independent Executor, aforesaid, have granted, sold and conveyed and by these presents do grant, sell and convey unto the said E. Cockrell all the rights, title, interest and claim which the said John Lovejoy had at the time of his death, and which his estate now has in and to the aforesaid property.

"To have and to hold the same unto the said E. Cockrell, his heirs or assigns, forever so fully and absolutely as I, as Independent Executor aforesaid can convey the same by virtue of my authority as such but without any warranty or warranties on my part."

This deed clearly evidences the intention to convey the entire undivided one-half interest in the five-acre tract, and is sufficient so to do.

Furthermore, it is affirmatively alleged in the plaintiff's amended petition that the "independent executor attempted to bargain, sell and strike off to the defendant, Ernest Cockrell, the entire undivided one-half interest in said five-acre tract of land, including not only the interest of the estate of the said John Lovejoy, deceased, in and to said tract of land, but the interest of this plaintiff as well, for the sum of Twenty-seven and 50/100 ($27.50) Dollars."

In view of this allegation, it is not in issue that the deed, upon its face, undertook to convey the entire community title to the land.

Appellee also insists this case, upon its facts, is distinguishable from Carlton v. Goebler and our opinion is in conflict with Slavin v. Greever (Tex. Civ. App.) 209 S. W. 479; Loving v. Clark (Tex. Civ. App.) 228 S. W. 590, and Sailer v. Furche (Tex. Com. App.) 22 S.W.(2d) 1065.

We think there is no material difference between the facts in the case at bar and in Carlton v. Goebler and, in any event, the reasoning of the opinion in Carlton v. Goebler is decisive of the question presented here.

The cases, supra, with which it is asserted our opinion conflicts, are not at all in point. The questions there at issue were altogether different, as is readily apparent by reading the opinions rendered in those cases.

The motion for rehearing is overruled.