LUCINDA SIMMONS ET AL. *v.* J. F. BLANCHARD ET AL.

1. LAND CERTIFICATES—ADMINISTRATORS' SALE—LAND.—A colonist, with his wife, settled in Mercer's colony, in 1847, soon after which both died. The husband's estate was alone administered on, and a colony certificate for 640 acres was issued in the name of the husband, and sold by the administrator : *Held*, That if legally sold, in due course of administration, such certificate being community property, the sale passed the legal title to it, and to any land on which it might be located, from the heirs of both the colonist and his wife.

2. LAND CERTIFICATE—ADMINISTRATORS' SALE—LAND.—Such a certificate was sold, under order of the County Court, by the administrator, on the estate of the deceased colonist in 1851, and the money paid by the purchaser ; there was no formal confirmation of sale, but the same was reported by the administrator to the court, in an exhibit showing the condition of the estate, two years after which the court ordered the administrator to make title to the purchaser to a part of the land afterwards covered by the certificate, which had been patented to the heirs of the colonist. Appellees claimed the land under the original purchaser at administrators' sale : *Held*, That these facts, in connection with other undisputed mesne conveyances to appellees, constituted a right in them to the land as against the heirs of the colonist's wife.

APPEAL from Vanzandt. Tried below before the Hon. M. H. Bonner.

*Robertson & Herndon,* for appellants.

*J. J. Hill,* for appellees.—It is not deemed necessary to refer to authorities in maintenance of the proposition that an order in probate cannot be impeached in a collateral proceeding on account of irregularities. The proposition which I meet and attempt to confute is that such an order can be impeached in a collateral proceeding on account of fraud. I maintain the negative of this proposition, and refer to the following authorities to show that a judgment or order in probate can never be impeached in a collateral proceeding on account of fraud by the heirs, because, the proceeding

being *in rem*, the heirs are parties to it, and, being parties to it, they must institute some direct proceeding. (Freem. on Judg., chaps. 8 and 13, secs. 132, 334–336; Grigon's Lessee *v.* Astor, 2 How., 338; United States *v.* Arredondo, 6 Pet., 709; Beauregard *v.* New Orleans, 18 How., 502; Sheldon *v.* Newton, 3 O., 494; Thompson *v.* Tolmie, 2 Pet., 157; Iverson *v.* Loberg, 26 Ill., 179; Green *v.* Green, 2 Gray, 361; Freem., secs. 335–337; Vase *v.* Morton, 4 Cush., 27; Leonard *v.* Bryant, 11 Met., 370; Freem., 486, 489, 491; Drinkard *v.* Ingram, 21 Tex., 650; Saltanstol *v.* Riley, 28 Ala.; 41 Ala., 26; Paschal's Dig., 1314; George *v.* Watson, 19 Tex., 369; Withers *v.* Patterson, 27 Tex., 491; Alexander *v.* Maverick, 18 Tex., 179; Gen. Laws 1870, p. 196; Constitution of 1869, art. V, sec. 7; Id. 1845, art. IV, secs. 10 and 15; Paschal's Dig., 480, 1382, 1384; Lott *v.* Ballaud, 21 Tex., 170; Hagerty *v.* Scott, 10 Tex., 530; McCown *v.* Foster, 33 Tex., 241; Soye *v.* Maverick, 18 Tex., 100; Soye *v.* McCallister, 18 Tex., 80.)

ROBERTS, CHIEF JUSTICE.—This is a suit to establish a right to one undivided half of three hundred and twenty acres of land, patented to the heirs of Ezra W. Wiley, by appellants, as the heirs of his wife, Margaret J. Wiley, by a former husband, against John F. Blanchard, in possession, who claims title to the land under a claim of title from the administrator of said Ezra W. Wiley, who sold the certificate of Ezra W. Wiley, which had been obtained in his name as a colonist of Mercer's colony, and which certificate had been located on the land by one of the intermediate purchasers thereof.

The alleged defect in the title of Blanchard is in a defective sale of the certificate by the administrators of the estate.

Wiley and wife having emigrated to and settled in Vanzandt county, a part of Mercer's colony, in 1847, both died near the same time, the wife first, and a colony certificate for six hundred and forty acres of land having been issued in his name, fell into the hands of the administrators of his estate—his

wife's estate never having been administered upon, otherwise than in the administration of his estate.

The certificate being community property, if it was legally sold by the administrator in the due course of administration of his estate, under these circumstances, for the payment of community debts, such sale passed the title in the certificate, and in any land upon which it might be located, from the heirs of both John W. and Margaret J. Wiley. (Soye v. Maverick, 18 Tex., 100; Soye v. McCallister, 18 Tex., 80.)

It was alleged and proved, that Blanchard, and those under whom he held title, had settled upon and improved the land for twenty years before the suit was brought; had paid a full consideration for the land, and had no actual notice of the claim of appellants to said land as heirs of their mother, Margaret J. Wiley.

As to the defect in the sale of the certificate, it was shown that a sale of it, with other certificates, was ordered by the County Court, upon the application of the administrators—one six hundred and forty and one three hundred and twenty—to be sold for cash; that a transfer of the certificate was made by the administrators to Andrew J. Hunter, reciting purchase by him at said sale, for the sum of forty-six dollars, dated on the 18th day of February, 1851; that there was no confirmation of said sale formally made by said County Court, but, instead thereof, it was shown that the administrators afterwards, on the 27th of October, 1851, submitted to said court "an exhibit of the condition of the estate of E. W. Wiley," which was approved by said court, in which, amongst many other debits and credits, an entry is found as follows:

"Sales for cash:

| | | | | |
|---|---|---|---|---|
| "One 640-acre land certificate | - | - | - | - | $44.00 |
| "One 320-acre land certificate | - | - | - | - | 29.50 |
| "Total | - | - | - | - | - | - | $73.50" |

In addition to this, it was shown that upon an application made to the County Court by Willis Steele, representing that

he had purchased one half of said certificate, and had it located and patented, the court, on the 27th of February, 1854, ordered the administrators to make to said Steele a deed to said land, which was done by one of the administrators. It was shown by the evidence of A. J. Hunter that he had bought the certificate at the administrators' sale and paid the administrators for it, and took a transfer from them for the same. These several orders of the court were admitted in evidence. The transfers of the certificate from Hunter down to Steele were in evidence, and the transfers of the land from Steele down to Blanchard were admitted to be regular and perfect.

Upon the trial, the court, after enumerating and specifying the various orders of court, transfers, and deeds in the chain of defendant's title to the land in controversy, charged the jury that they were sufficient to vest a title to the land in the defendant Blanchard; and further, that if Blanchard, or any one of those under whom he held, had purchased the said land for a valuable consideration paid therefor, without notice of the claim of appellants, he, Blanchard, had a good title as against them.

These charges of the court, we must presume, proceeded upon the idea that the appellants, being heirs of the wife, had only an equitable interest in the certificate, and in the land upon which it was located and patented to the heirs of Ezra W. Wiley, the said interest not being apparent either upon the face of the certificate or upon the face of the patent; and that the certificate having been sold by an order of court for a valuable consideration paid to the administrators of the estate of Ezra W. Wiley's estate, passed to the purchaser an equitable title thereto, (although the sale was not formally confirmed,) superior to the equities of appellants.

We are not prepared to say that this was an erroneous view of the case as presented in the record.

The appellant's counsel have filed no briefs, and that of the counsel for appellees, though exhaustive, relates mainly

to the conclusive force of the order of the County Court, when collaterally attacked.

It is to be noticed in this case that the certificate issued in the name of Ezra W. Wiley, and the patent was issued to the heirs of Ezra W. Wiley. In reference to the patent, the legal estate in the land is in the heirs of Ezra W. Wiley. If their interest in it had not been divested, they would still hold the legal title—it may be, in trust for the appellants—to the extent of the share of the half interest, inherited through their mother, subject to whatever equities may have attached to the heirs of Ezra W. Wiley by their expense of location, occupation taxes, and improvements upon the land. The appellants hold no better position, as against appellee, who claims the title of the heirs of Ezra W. Wiley, as represented in the patent through a *bona fide* though informal sale of the certificate by the administrators of his estate.

There was not a formal confirmation of the sale made by the County Court upon a report of the sale of the certificate by the administrators. There was shown in evidence an order of court for the sale of this certificate, identified by name and number of acres, as well as others, and the order required two certificates to be sold for cash—one for 640, and one for 320 acres. The order was made on the 27th day of January, 1851; also a transfer, dated 18th of February, 1851, from the administrators to A. J. Hunter, of said certificate, reciting that it had been sold by order of court for forty-six dollars, paid to them by Hunter; also an exhibit of the administrators, filed and approved on the 27th of October, 1851, showing that a certificate for 640 acres and for 320 acres had been sold for cash; and also an order of court on the 27th of February, 1854, directing the administrators to make Steele a deed to 320 acres of land, upon which a part of this certificate had been located and patented upon his representation that he had become the owner of that much of the certificate by transfers from Hunter down to him. This was sufficient evidence that the sale had been made, and that it

had been called to the attention of the court, inferentially by the exhibit, and certainly and directly by the application of Steele, three years after the sale, and that the court did not disaffirm the sale, but affirmed it, as far as this informal mode could have that effect. From these proceedings it was fair to presume, in the absence of contrary evidence, that the sale had been made for a legitimate purpose, the proceeds of which had gone to the benefit of the estate, and that its legality and fairness had been recognized by the court by an order made in favor of Steele, when its attention had been afterwards directly called to the sale.

This constituted a *prima facie* equitable right to the certificate in the hands of Steele, to whom it had been transferred, if not a perfect title. There being no evidence to rebut the fair presumption arising upon these facts, all of which were established by written instruments and records, it was not error in the court to charge the jury that these, in connection with other undisputed muniments of title, constituted a right in the defendant to the land as against the heirs of the wife, who were plaintiffs in the suit. That was the effect of the charge.

The charge did not embrace the conclusion that the sale of the certificate was such as to invest a perfect legal title. A regularly legal title to property sold at an administrator's sale can only be passed from the estate by confirmation of the sale upon a report of it by the administrator in conformity to the statute. (Paschal's Dig., art. 1327; Littlefield *v.* Tinsley, 26 Tex., 357; Davis *v.* Stewart, 4 Tex., 223; Bradbury *v.* Reed, 23 Tex., 260.)

In the decisions wherein this is held, it is virtually conceded that an equitable right may be acquired by a sale without a formal confirmation. In the case of Neill *v.* Cody, it is said: "A confirmation of the sale, or something from which a confirmation might be inferred, or at least, something done by the purchaser giving him the right to have the sale confirmed, must have been shown, to enable him to claim title. (26 Tex., 290.)

It *prima facie* appears, as before indicated, that Hunter bought and paid for the certificate at a sale ordered by the court, and the court at least recognized that he had done so, without a disaffirmance of the sale; and that would have been a sufficient ground for his asking a confirmation of the sale.

This being decisive of the case, we do not feel called upon, without briefs or discussion of other points, to refer to them.

Judgment affirmed.

AFFIRMED.

Justice Moore did not sit in this case.