J. D. Moody et al. v. M. E. Butler et al.

(Case No. 1999.)

1. Community debts — Presumption — Burden of proof.— In a suit for land against heirs claiming it as inherited from their deceased mother, it was shown that the land was community property at the date of the mother's death, and that the father died nearly two years afterwards. No debts were shown to have existed against the community estate at the date of the father's death. The plaintiffs claimed under an executor's sale made to pay debts against the deceased father's estate. *Held:*

(1) That while the presumption might be indulged that the debts for which the land was sold were community debts, if the death of husband and wife occurred near the same time, no such presumption will be indulged after so great a period, but the burthen of proving it would be on the plaintiff.

(2) Especially will no such presumption be indulged when the parties against whom the presumption is sought were shown to have been economical and prompt in paying debts, and the debts were shown to have existed for a long period of time.

(3) In the absence of evidence to establish the fact that the land was sold to pay community debts, the executor's deed conveyed but a half interest in the land.

2. Collateral attack.— When one acted as executor, and was recognized and treated as such by the court, which could rightfully exercise jurisdiction, the mere fact that the records of the court do not affirmatively show that he had given bond as executor will not avoid his action as such, or that of the court, or render them subject to collateral attack.

3. Confirmation of sale.— The failure to enter on the minutes of the court the confirmation of a sale made of the land of an estate, when the indorsement of confirmation was made on the return of sale by the judge, and by clerical neglect was not entered on the minutes, cannot prejudice the purchaser, or render the sale subject to collateral attack.

4. Quitclaim deed.— An heir inheriting from the community estate of the father as well as from that of the mother interests in the same land, who quitclaims by deed all his interest in the land as heir of his father, conveys no interest to the purchaser in the estate inherited from his mother.

5. Limitation.— No limitation will run in favor of a tenant in common in possession against his co-tenant until after notice that the possession is adverse is brought home to him.

Error from Trinity. Tried below before the Hon. John R. Kennard.

Trespass to try title brought by plaintiffs in error to recover land, a part of the headright league granted to Joel Clapp. The defendants pleaded: First, not guilty. Second, title by limitation under the three, five and ten years' statutes. Third, improvements in good faith. Judgment for plaintiffs for one-half the land, and for the defendants for the other. The court, in the conclusions reduced to writing and filed, found against defendants' plea of limitations,

and rested the decision on the questions presented in the opinion of the supreme court.

*D. A. Nunn*, for plaintiffs in error, cited: Simmons *v.* Blanchard, 46 Tex., 266; Soye *v.* McCallister, 18 Tex., 99; Murchison *v.* White, 54 Tex., 78.

*Denson & Burnett*, for defendants in error, cited: Thompson *v.* Cragg, 24 Tex., 582; Johnson *v.* Harrison, 48 Tex., 267; Moreland *v.* Atchison, 19 Tex. 303; Blanton *v.* Mayes, 58 Tex., 422; Tippett *v.* Mize, 30 Tex., 365.

WILLIE, CHIEF JUSTICE.— The land in controversy is admitted to have been the community property of Joel Clapp and his wife, Malinda. Upon the death of the wife, in March, 1852, her half of the land descended to her children, subject to the payment of community debts. Joel Clapp did not die till the 1st of January, 1854, and we have no evidence that at the time of his death any debt existed against the community estate. In order to give the deed of Joel Clapp's executor the effect of passing title to the entire land, as well that portion of which he died possessed as of the share inherited by the children from their mother, it was necessary that there should have been community debts of Joel Clapp and wife existing at the time the land was sold by Clapp's executor. Sanger *v.* Moody, 60 Tex., 96. The burden of proving this fact was upon the parties attempting to give this effect to the deed. There was no proof offered by them on this subject, but they relied upon the simple fact that debts had been presented and allowed against the estate, claiming that the presumption was that they were community debts, as the wife had died not quite two years before the death of her husband.

Whilst this presumption might be indulged when the deaths of the husband and wife occurred at or about the same time, it is not a reasonable one when so great a period has elapsed, and more especially when the parties against whom the debts are to be presented have existed for so long a time are shown to have been economical and prompt in the payment of indebtedness. Soye *v.* McCallister, 18 Tex., 80; Simmons *v.* Blanchard, 46 Tex., 266.

Besides, there is no evidence as to the time when the demands allowed by the executor were presented to him. The sale of property for their payment occurred more than two years after the death of the wife. The court cannot conjecture that these claims were presented before two years had expired from the date of that event,

or that they were claims which would not be barred by the two years' statute of limitations, in order to make out a case for the appellants, which they have the burden of proving by sufficient evidence. We must treat the case, therefore, as if the land was not sold to pay community debts. The effect of the sale, if it was not void, would then be to vest title in Whitt to Joel Clapp one-half of the land.

There is nothing in the proceedings of the county court of Freestone county, in the matter of Joel Clapp's estate, that avoids the sales of property made by his executor, so as to render them liable to collateral attack. The executor seems to have administered the estate under direction of the county court, and to have been recognized by that court as lawfully acting in that capacity. As he probated the will, and took the oath, and was recognized by the court, the mere fact that the record does not affirmatively show that he gave bond will not avoid his action and that of the court.

Whilst the record does not show that the confirmation of the sale of the land made by the executor was entered upon the minutes of the county court, it does show that an indorsement of confirmation was made upon the return of sales by the judge of the court. The failure of the clerk to enter the order was a clerical oversight which cannot prejudice the purchaser in a collateral attack upon his title. This court has, in effect, held that where there is any evidence of confirmation, or of something from which an intention to confirm might be inferred, or something entitling the purchaser to have the sale confirmed, the purchaser will be enabled to claim title to the land. Neill v. Cody, 26 Tex., 289. Under this ruling enough was shown in this case to establish Whitt's title to one-half the land in controversy. Simmons v. Blanchard, 46 Tex., 266.

We think, therefore, that Whitt, through whom the appellants claim, obtained a good title to Joel Clapp's half interest in the land through the sale and deed of the executor.

The subsequent quitclaim made to him by a portion of the heirs did not enlarge his interest in the land. They merely quitclaimed their title as heirs of Joel Clapp, and their claim as such did not include any more than their father's community interest, as they derived no portion of their mother's interest in the land by descent from their father. The conveyance is unlike that in Nichols v. Stewart, 15 Tex., 226. The expressions used in the two deeds are different, and in that case there was no other property to which the conveyance could attach, unless it was the wife's community estate. Here the parties conveying had held one-half the land as heirs of

their mother, and the other one-half as heirs of their father, and a conveyance of the latter half in distinct language could not be construed to include the former also.

At the time the appellees settled upon and improved the land it was owned in common by them and the heirs of D. I. Moody, deceased, who had succeeded to all the interest of Whitt. When the appellees took possession of the land they did not by any overt act give notice that they intended to hold it in opposition to their co-tenants in common. No secret intention on their part, nor intention expressed to third parties, but not brought to the knowledge, or presumed knowledge, of Moody's heirs, could give the appellees the benefit of an adverse possession, or one hostile to their co-tenants. The mere possession itself would be referred to that right which every tenant in common has to peaceably settle upon and enjoy the occupation of the common property, without ousting his co-tenant. Hence such occupancy was not in itself sufficient to charge the appellants with notice that their interest in the land was disputed, and that the benefit of the statute of limitation would be claimed by their co-tenants if suit were not brought within time to prevent its bar.

We therefore agree with the court below in its conclusions, and for the reasons given by the judge that the plaintiffs were entitled to recover only one half interest in the land, and no more. The judgment of the court below was correctly rendered, and it is accordingly affirmed.

AFFIRMED.

[Opinion delivered February 6, 1885.]