SUSAN H. CORLEY ET AL. v. CHRIS. ANDERSON.

No. 55.

**1. Charge of Court as to Facts Proved.**—When a patent to land is in evidence in a case, the court should so state to the jury, and not leave it to them to find the fact that the patent was issued; because it would be submitting to them a question of law.　It is not error for the court when facts are proved without contradiction to assume such facts, or to instruct the jury that they have been established.

**2. Joint Executors.**—The principle that it requires the joint action of executors to convey property, applies to executors who are trustees, such as independent executors, and not to administrators and executors who obtain their power from the court, under whose direction they act.　A sale by them is in reality a sale by the court.　Where there are two such administrators, an order to one to sell, sale made and reported by him and confirmed, will pass title against a collateral attack as effectually as if both had acted.

**3. Confirmation of Sale.**—An entry made on the minutes of the court relative to a sale made under its order, not in terms confirming it, but merely noting that the return had been made: *Held,* that it was not error for the District Court to hold, in view of other facts, that it was a confirmation of the sale; and if it was error, such error was rendered immaterial by the court submitting to the jury the fact of the payment of purchase money by the purchaser, and the verdict of the jury from which it is necessarily implied.

4. Sale of Located Certificate.—A sale of a land certificate is not sub-ject to the objection that when sold it was personal property and not in posses-sion of executor and present at the sale, when it appears that the certificate had been to some extent located, and the order of court under which it was sold au-thorized a sale of the realty as well as personalty.

5. Limitation.—It is incumbent on plaintiffs, who plead disability to avoid the effect of the statute of limitations, to prove that at the date the adverse pos-session began, the disability existed, and that it continued to exist for a sufficient time to prevent the statute from having its effect. Thus, in case of coverture, to show when the marital relation began and when it ceased.

6. County Courts — Judgments. — In matters pertaining to estates, County Courts are of general jurisdiction, and their orders and judgments are, on collateral attack, supported by presumptions, as other courts of general juris-diction.

ERROR from Bandera.   Tried below before Hon. T. M. PASCHAL.

*James B. Goff*, for plaintiffs in error.— 1. The probate proceedings were insufficient to divest title to the land warrant from the estate of Karnes.   Langley v. Harris, 23 Texas, 569; Fuller v. O'Neal, 69 Texas, 351; Neil v. Cody, 26 Texas, 290; McBain v. McBain, 15 Ohio St., 337; Curtis v. Norton, 1 Ohio, 137.   The evidence shows no order amounting to a confirmation of sale.   Hampton v. Dean, 4 Texas, 455; Railway v. Gilmore, 62 Texas, 391; De Garza v. Galvan, 55 Texas, 56; There is no evidence of payment of purchase money.   McGreal v. Wil-son, 9 Texas, 426; Cain v. Thomas, 26 Texas, 581.

2. An executor's sale of personal property not in his possession or present at the sale is invalid.   Freem. on Ex., sec. 290; Collins v. Mont-gomery, 3 Nott & McC., 393.

3. Plaintiffs proved title to the land in controversy by heirship to H. W. Karnes, and there was no divestiture of title out of Karnes by transfer or limitation shown.   Miller v. Miller, 10 Texas, 319; Finch v. Edmon-son, 9 Texas, 504; Hart. Dig., arts. 1018, 1023; Pryor v. Downey, 50 Cal., 389; Haynes v. Meeks, 20 Cal., 398; Berry v. McClellan, 6 Gray, 535; Washington v. McCaughan, 34 Miss., 304.

*McLeary & Fleming*, for defendant in error.— 1. As to sufficiency of probate proceedings:   Simmons v. Blanchard, 44 Texas, 266; Graham v. Hawkins, Posey's U. C., 519; Erhart v. Bass, 54 Texas, 97; Alexander v. Maverick, 18 Texas, 179; Withers v. Patterson, 27 Texas, 501; Guil-ford v. Love, 49 Texas, 715; Farris v. Gilbert, 50 Texas, 350; Moody v. Butler, 63 Texas, 290.

2. The plaintiffs claimed the land in controversy as the heirs of H. W. Karnes.   It was not error for the court to submit it to the jury, as a question of fact to be found by them, whether he was the same person as H. W. Karnes to whom the original certificate was granted.   1 Sayles'

Civ. Stats., art. 683, and authorities; Littlefield v. Tinsley, 26 Texas, 357; Bradley v. Reed, 23 Texas, 260.

3. The probate proceedings read in evidence were sufficient to divest the title to the land certificate out of H. W. Karnes' estate. Simmons v. Blanchard, 46 Texas, 266; Tom v. Sayers, 64 Texas, 340.

4. It was incumbent on plaintiff to prove marriage during the possession of defendant. Sayles' Civ. Stats., arts. 3220, 3201.

5. The presumption, after so long a time, is that the land certificate was in the hands of Karnes' executor when he sold it. Sayles' Civ. Stats., arts. 1317, 1817; Belcher v. Fox, 60 Texas, 527; Cook v. Dennis, 61 Texas, 246.

JAMES, Chief Justice.— Plaintiffs in error, as heirs of Henry W. Karnes, brought suit to recover a tract of 480 acres, surveyed in 1856 by virtue of bounty warrant number 407, issued to Henry W. Karnes on July 2, 1838. Patent issued July 6, 1859; survey made in 1856.

Defendant pleaded not guilty; also the three, five, and ten years limitations, improvements, and vouched his warrantors, who made similar answers. Verdict and judgment were for defendant.

*Conclusions of Fact.*—That patent was to Henry W. Karnes, and most of plaintiffs were shown to be his heirs.

About 1840 Karnes died, and his will, probated in Bexar County, named Thomas Addicks, William Winston, John W. Smith, and John C. Hays executors (not independent executors), and provided, among other things, for the payment of his debts.

Winston did not qualify, but it appears that the others did, and at the January Term, 1841, Smith resigned, up to which time all three were the executors, and thereafter Addicks and Hays were the executors.

In December, 1840, an inventory was returned in the estate by John C. Hays and John W. Smith, executors, which describes, besides certain lands, the following: " One military warrant, number 3985, for 1280· acres of land, as applied for, on the Rio Frio; appraised at $100. One donation warrant, number 407, for 640 acres, not applied for; appraised at $50."

In September, 1841, an additional inventory appears to have been filed. This inventory was not shown, but enough appears to satisfy us that it was for personal property not embraced in the original inventory. On October 25, 1841, an order was made that Addicks, one of the executors, sell the personal property in the supplemental inventory, and also the real estate of the succession.

From the notice of sale immediately following (November 7, 1841), and from the account of sales filed January 6, 1842, by Addicks, the certificate seems to have been regarded as located, for in the notice the two

certificates appear to be referred to as surveys, and in the account of sales the warrant in question is described as follows: "Land warrant for 640 acres of land, number 407, granted to the deceased, together with the benefit of the location on Sandies Creek, sold to James Robinson for $50." From which we conclude that at the date of the order of sale this certificate was either located, or in such condition as to have been regarded by the court as real estate in making the order of sale, and was intended to be included in such order. It appears that the account of sales was filed by Addicks, under oath, on January 6, 1842, in vacation, and at the following term the court made the following entry with reference to it: "Sale bill returned by one of the executors amounting to $175.72¾, which was filed on the 6th instant during vacation." Nothing seems to have been done afterwards in the estate, and no deed or transfer from the executors, or either of them, was produced or shown, and there was no other evidence of payment by Robinson of the purchase money for the certificate.

The warrant was not placed upon the particular land in controversy until 1856, it having been obtained by the representative of James Robinson's estate from the surveyor's office.

There appeared to be debts against the estate.

The court, among other charges, gave the following:

"Charge 1. If the jury find from the evidence that the land in controversy was patented to H. W. Karnes, that he died before the 20th of May, 1889, and that plaintiffs have established the fact of heirship as claimed, this would constitute a prima facie case entitling them to recover the land sued for, unless you further find, under the instructions herein after given you, that defendant has shown title out of Karnes' estate to himself, or unless his title is defeated by limitation; and you will, in case you find the above facts proven, and that defendant has not shown title out of H. W. Karnes' estate as aforesaid, or unless defeated by limitations, you will find a verdict for plaintiffs.

"Charge 2. You are instructed, that the transcript or certified copies of orders of probate proceedings from the Probate Court of Bexar County, in the estate of Henry W. Karnes, deceased, introduced in evidence by the plaintiffs and defendant, establishes, first, a valid administration on said estate; second, an order to sell at public sale the land certificate by virtue of which the land in controversy was located; third, a return of said sale by the executor ordered by the court to make it, and the order of the court recognizing the return of said sale, amounting to a confirmation or approval thereof. These facts prima facie vested the title to said land certificate in the purchaser, James Robinson; and the deeds from said Robinson heirs to Hoffman and Schmidt to Johnson and Anderson, introduced in evidence by the defendant Anderson, had the effect to vest title of said Robinson in the defendant Chris Anderson, provided it fur-

ther appears from the evidence, and you so find, that said Robinson paid the amount of the purchase money for said land warrant number 407. And if you so find the facts to be, you need go no further in your investigation of this case, but will return a verdict for defendant."

By charge 3 the court instructed the jury, that if they found that the purchase money was not paid by said Robinson, they would proceed to consider the defenses of limitations, etc.; and in this charge it was stated by the court that plaintiff's counsel admitted that all of the plaintiffs except Susan H. Corley, Ellen M. Cox, Arkansas P. Denison, and Annie O. King were barred by limitations. After charging the jury formally in regard to the several pleas of limitations, the court stated further as follows:

"But in this connection, the jury are charged, that the statutes of limitation as herein charged do not run against a married woman during her coverture; and the plaintiffs having replied to defendant's plea of limitation that they were married women, you are therefore charged, that if you believe that the plaintiffs, or either of them, were married women at the time the defendant's adverse possession commenced, then the statute of limitation did not run against such plaintiff so long as such disability existed; but in this connection, you are charged that the burden of proof is on the plaintiffs to show the date of such marriage and period that they continued under such disability."

There was evidence showing possession as satisfied the statutes of limitations, by defendant Anderson and those under whom he held, from and since 1872, with deeds registered and payment of taxes. The suit was filed May 20, 1889.

There was no evidence as to Arkansas P. Denison's coverture or heirship. Annie O. King was shown to have married in 1865, and she sues as a feme sole. Ellen Cox was married in 1856 to R. M. Cox, and sues with her husband, R. M. Cox. Susan H. Corley was married in 1844 to W. H. Corley, and sues with her husband, W. H. Corley.

Defendant showed a regular chain of title from and under Robinson.

*Conclusions of Law.*—The first assignment of error is, that the court erred in its first charge above copied, for, as is stated by appellants, "submitting to the jury a question of law, and making their finding that the land was patented to Henry W. Karnes a condition precedent to their finding a verdict for plaintiffs."

The patent to Henry W. Karnes was in evidence without question, and it would have been proper for the court to have so stated to the jury, without leaving it with them to find the fact. That the legal effect of the patent was to vest title in Karnes is stated in the charge. It is not error for the court, when facts are proved without contradiction, to assume such facts, or to instruct the jury that they have been established.

At the same time it is not error to submit the existence of such facts to the jury as other facts are required to be submitted. If a party desires a charge to be given to the effect that a certain fact is proved or not proved, he should ask for it. Ivey v. Williams, 78 Texas, 687. This was not done in this instance. Besides, it appears that other portions of the charge virtually instruct the jury that the title to this survey was originally in Henry W. Karnes, and it is altogether improbable that any detriment resulted to plaintiff in this particular.

It is insisted that the second charge was erroneous, because the evidence showed that the sale was made at the instance of and by one of the executors only, and that the evidence does not show a confirmation of the sale of this warrant to Robinson. It appears that the court instructed the jury, that the facts in evidence relative to the sale showed a sale and a confirmation thereof, and that title to the warrant was thereby vested in Robinson, provided the jury should find from the evidence that he paid the purchase money. This last named fact was the only one left to the determination of the jury in this connection.

The principle invoked by appellant, that it requires the joint action of executors to convey property, applies to executors who are trustees, such as independent executors. Where more than one of such have qualified, they must all act to exercise powers derived from the will, the reason being that the power has not been vested in any one of them. We do not believe this principle is applicable to administrators or to executors in whom no power to convey is vested by their appointment, and who obtain what power they may exert in the premises from the court under whose direction they act. Schoul. on Exrs. and Admrs., sec. 404. A sale by the ordinary administrator is not a sale by him, but it is in reality a sale by the court, a species of judicial sale. Where, as in this case, there were two administrators when the proceedings of sale were had, an order of the court for one of them to sell, and a sale reported by him and confirmed, will be held to pass title to the property, certainly as against collateral attack, as effectually as if both had acted. The sale is not a nullity. In Wells v. Mills, 22 Texas, 302, where there were two administrators, a sale made by one of them, and returned by him alone, was regarded as a sufficient return, although in that case it seems that both afterwards joined in making deed to the purchaser.

The entry made in the minutes of the court relative to the account of sales was not in terms a confirmation of the sale. The court thereby merely noted the fact that the return had been made. But we can not say that the district judge erred in declaring that it was a confirmation, in view of the undisputed facts connected with it. The entry was not a rejection of the sale; no further sale was ordered, no objection was made to the sale by creditors or others, no further action whatever is shown to have taken place in the estate, and no question has been since raised by

those interested concerning it, and the certificate was taken possession of by Robinson's representative.   If there was error in the court assuming that these facts and circumstances established a confirmation of the sale, the error was rendered immaterial by submitting the fact of the payment of purchase money by Robinson, and charging the jury that for the proceedings to have passed the title to the purchaser, it must appear that Robinson paid the purchase money, and by the finding of the jury thereon. This question of fact was correctly submitted to the jury under the facts and circumstances presented by the testimony, and their verdict necessarily implies that they concluded the purchase money had been paid. This fact being found, it followed that the purchaser was entitled to a confirmation of the sale by the court, and this, together with the other facts stated, was undoubtedly equivalent to a confirmation, and should operate to confer title.   Neill v. Cody, 26 Texas, 290; Moody v. Butler, 63 Texas, 210.

It is insisted also, that an executor's sale of personal property not in his possession or present at the sale is invalid.   What merit there may be in this as a proposition of law we need not examine into, because, if correct, it has no application to this case.   The evidence indicates that the certificate had become identified with a location, and was thus sold, and naturally the certificate would be in the surveyor's office, where it was afterwards found by the representative of Robinson, and withdrawn.   Appellants emphasize this condition of the warrant in their assignments and brief.   It can not be seriously contended that if sold as a located certificate, it was necessary that it should have been in the administrator's hands at the time of the sale.

We will here add, that the case presented is not one where a land certificate was sold after it had become merged into land.   It appears to have been to some extent located, and the order authorized the sale of realty as well as personalty, and the warrant, with the right to the location, was the subject of the sale.   Farris v. Gilbert, 50 Texas, 350. That the location was afterwards abandoned and another location made, would not affect the title to the certificate.

It follows, after disposing of the above features of the case, that appellants have no legal reason to complain of the verdict, unless certain errors assigned in the charges on limitations are well taken.   The fifth assignment of error is as follows:   " The court erred in the fifth paragraph of defendant's special charge, virtually instructing the jury that it was incumbent on the plaintiffs, who had shown themselves to have been married women at the time possession was taken, to prove the additional fact that the marital relation had not been dissolved, which is manifest error, inasmuch as when a marriage has been proven the legal presumption is that the relation subsists till otherwise shown."

It is incumbent on plaintiffs who seek, for disability, to avoid the effect

of the statute of limitations, to prove that at the date the adverse possession began, the disability existed, and that it continued to exist for a sufficient time to prevent the statute from having its effect.

The court's charge (number 3 above) states a correct proposition of law on this subject, as applicable to the facts of this case; and if, as appellants contend, a presumption obtains in such case that a disability once proved to exist continues to exist, they should have requested such a charge.

We are of opinion that this general rule of evidence concerning presumptions of fact does not apply in respect to disabilities relied on to defeat the statute of limitations. The statute is a complete bar against the title, when the facts supporting it are shown, presumably against all persons, even those under disability. To avoid its operation, the claimant must by some affirmative evidence establish both the existence of the disability at the time the statute commenced to run, and its continuance for a sufficient period.

In this case the charge that appellant argues should have been given would not have been applicable to the evidence. Of the four females claimed by appellants to have been under disability of coverture, one of these, Arkansas P. Denison, is not shown to have been married or to be one of the heirs. Two of them, Susan H. Corley and Ellen M. Cox, were both suing jointly with their husbands, and the evidence shows they were man and wife respectively long before the possession began, and it was not necessary to resort to presumptive evidence of the continuance of their coverture. The remaining one, Annie O. King, was married to W. J. King in 1865. She sues as a feme sole, and it does not appear from the evidence when she ceased to be a married woman. It is not even shown that she was still a married woman in 1872, when the adverse possession began. It would, we believe, have been improper to charge the jury in her case, that they could presume that she was under coverture in 1872 and for a period afterwards sufficient to obviate the bar of the statute.

The seventh assignment of error is this: "There being no deed or evidence of payment of the purchase money, or confirmation of the sale of the warrant, defendant showed neither title nor color of title deraigned from the sovereignty of the soil as contemplated by the statute, hence the refusal of the court to give to the jury plaintiffs' special charge number 1 was error." The charge asked was, that the statute of limitations of three years did not apply to the facts of the case. The conclusions of this court already given dispose of this assignment in favor of the applicability of the three years statute.

It is further contended, that to sustain the judgment it was essential that an application should have been made by all the executors, for that purpose, for good cause shown. It was once held in this State, that the

County Court, in probate matters, was one of limited jurisdiction, and that such an application must be shown to have been made in order to give the court jurisdiction. Finch v. Edmonson, 9 Texas, 504. This idea has been abandoned, and the more enlightened doctrine now prevails, that such court, in matters pertaining to estates, is one of general jurisdiction, and its orders and judgments are supported by presumptions, as other courts of general jurisdiction, on collateral attack. Reems v. Masterson, 80 Texas, 46; Gillenwaters v. Scott, 62 Texas, 672.

Our conclusion is, that there is no error requiring a reversal, and the judgment is affirmed.

*Affirmed.*

Delivered November 8, 1893.