**FROST et al. v. BAUMGARTEN et al.**
**No. 11605.**

Court of Civil Appeals of Texas. Galveston. Feb. 10, 1944.

Rehearing Denied June 15, 1944.

Fouts, Amerman & Moore and W. J. Howard, all of Houston, for appellants.

Wayman & Kleinecke and Crawford & Borofsky, all of Galveston, Edgar Monteith, Albert R. Young, Albert J. DeLange, F. A. Stamper, R. P. Beman, Jr., and Emory T. Carl, all of Houston, Strong & Moore and Beeman Strong, all of Beaumont, Wm. D. Decker and W. E. Stone, both of Galveston, Baker, Botts, Andrews & Wharton and Tom Scurry, all of Houston, Royston & Rayzor, Byron Economidy, Armstrong, Cranford, Barker & Bedford, Fine G. Bedford, and Williams, Neethe & Williams, all of Galveston, Lawler, Wood & Childress and Elliott Cage, all of Houston, Edward A. Jahn, of Galveston, and Joe S. Brown, Irwin W. Coleman, Fountain, Cox, Gaines & Wilcox, and Joyce Cox, all of Houston (John E. Green, Jr., of Houston, and Donald Campbell and L. A. Thompson, both of Tulsa, Okl., of counsel), for appellees.

GRAVES, Justice.

The appellants, claiming to be the owners thereof, sued the appellees in the statutory action of trespass for the title to and possession of certain fully described lands, alleged to be located in the Texas Trunk Railroad Company Surveys Nos. 1 and 3, in Galveston County, Texas, claiming them to have been so located and surveyed under certificates Nos. 386 and 387, issued to 'such Railroad Company by the Commissioner of the General Land Office of the State of Texas, on March 17 of 1882.

They further presented, through testimony the court heard, that on the 5th day of December of 1881, the district court of Kauffman County, Texas, in cause No. 1824, styled W. K. Snow v. Texas Trunk Railroad Company, had appointed Thomas M. Simpson as Receiver of such Railroad Company, specifically authorizing and ordering him to both operate the railroad and to sell the company's assets under the direction of that court; that, in conformity therewith, such Receiver thereafter, on March 21 of 1882, did sell and in writing transfer and assign such certificates Nos. 386 and 387 to Yandell Ferris and Geo. H. Schley, respectively; that Ferris and Schley duly paid the Receiver the agreed consideration for such transfers, received delivery thereof from him, had the lands properly surveyed thereunder, procured patents therefor, which the Land Commissioner, pursuant to a universal practice of that office—where title to the certificates came from a Receiver's sale—issued in the name of the Railroad Company rather than in the names of the certificate—assignees themselves, and thereupon duly recorded such assignments, along with the patents, in the county clerk's office in Galveston County, where the lands lay "on an area between the Lemuel Crawford survey No. 39, and the Asa Brigham and other surveys", thereby acquiring a perfect right and title thereto;

Finally, that the respective titles to such lands—down under Ferris and Schley—had regularly descended to and had become vested in themselves, to the exclusion of any right, title, or interest thereto in any of the appellees.

The several appellees answered by general denials, pleas of not guilty and others, while some of them set up in their own defense the 5 and 10 years' statutes of limitation.

At the conclusion of the appellants' testimony and before the introduction of any evidence by the appellees, who, however, had reserved all rights to introduce evidence in event their motion for instructed verdict in their own behalf were overruled, the court—concluding that the appellants had not made out a prima facie case against them, and that they had presented no evidence that would authorize any finding, or raise any issue, that any such sale (as of the certificates claimed) had been validly made—sustained the appellees' motion for an instructed verdict in favor of them all, directing the jury accordingly; on the due coming in of such verdict, the court entered a "take nothing" judgment against appellants, in favor of all the appellees.

From that order this appeal regularly proceeds.

■ Since the cause of action was solely one for the recovery of the title to the lands sued for, and the court thus took it peremptorily from the jury in its entirety, it follows, under well-settled authority, that if appellants' testimony showed any title as a matter of law, or raised an issue of fact over whether or not any of them had a title to any of the sued-for lands, a reversal of the judgment must be ordered; otherwise, an affirmance should follow as a matter of course. Donaldson v. Oak Park Cemetery, Tex.Civ.App., 110 S.W.2d 119.

Appellants pray: (1) For a reversal and rendition in their favor, on their insistence that the uncontroverted evidence established title in them to the described lands; (2) in the alternative, since the evidence at least raised issues of fact over whether such title was in them, for a remand of the cause for another trial below.

■ At the outset, in the state of the record, it is obvious that no judgment for the specifically-described land could be rendered by this court for them, since the trial court, as an incident to its taking the cause from the jury on the ground that they had not shown any title to the certificates, or to the sued-for land, wherever located, excluded all the evidence appellants proffered as showing its location to be on the ground within the boundaries of the grants they so declared upon; wherefore, in no event, although their bills of exception to such exclusion fully set out the proceedings upon that feature, could this appellate court pass upon the credibility of that proof and decree to them specific land accordingly. The question of the location of the land is accordingly not involved in this appeal.

Indeed, it is also evident, in view of appellants' having so specifically pled their title as coming alone through such certificates Nos. 386 and 387, that the cause turns upon the validity of that alleged title out of the Texas Trunk Railroad Company into Ferris and Schley, thence down into their successors.

■ Moreover, in this suit for land—claimed to have been acquired through the medium of the certificates—appellants had to recover upon the strength of their own title, Kenley v. Robb, Tex.Com.App., 245 S.W. 68; Reese v. Cobb, 105 Tex. 399, 150 S.W. 887; Kirby Lumber Co. v. Conn, 114 Tex. 104, 263 S.W. 902; but in doing so they were not required, with the jury in attendance, to do more than show from the preponderance of the evidence such matters of fact as, if found to be true, would properly have formed the basis for a judgment thereon at the court's hands in their favor.

As indicated, the validity of the two certificates in their hands, lying at the base of their claim, had to be established either by conclusive proof, or by showing material facts upon which their validity was at least a legitimate inference.

■ An appraisal of the testimony they presented in support of their recited claim of title convinces this court that, while it did not, as they so earnestly urged, conclusively show them to have had title either to the two certificates or to the specific land they described, it did raise issues of fact over both their claims that should have gone to the jury.

It reasonably tended to prove, in material substance, the facts already stated as having been presented by them in substantiation of the various proceedings down through which they claimed not alone to have derived and perfected their right to the two certificates, but also to have caused the sued-for land to have become set apart from the public domain by virtue thereof; that Receiver Simpson did so sell and transfer or deed and deliver on the same day, March 21 of 1882, certificate No. 386 to Yandell Ferris, and No. 387 to Geo. H. Schley; that Ferris' title thereto subsequently went down into one of these appellants, while Schley's likewise went into another of them; that from among Ferris' original papers, the custody of which had been in his successors in title, there were presented on this trial the original of his Receiver's deed to certificate No. 386, along with the original patent No. 28, issued thereunder in the name of the Texas Trunk Railroad Company but delivered to Ferris as the assignee thereof, both accompanied by some original correspondence with regard thereto;

That Schley in 1890 conveyed his land to his daughter, Mrs. Everett, the predecessor in title thereto of appellant, Mrs. Coulter, who accounted for her failure to produce the Schley deed to certificate No. 387 by testimony to the purport, among other things, that the 1900 storm at Galveston, where Mrs. Everett then lived, had washed away her house and everything in it, presumptively including the like Schley cer-

tificate No. 387, together with the Land Office patent No. 27 issued thereunder;

That such original certificate No. 386 to Yandell Ferris, of which No. 387 to Geo. H. Schley was a contemporaneous counterpart, ran as follows, to-wit:

"The State of Texas,
"County of Dallas.

"For and in consideration of the sum of One Hundred Dollars paid by Yandell Ferris, and by virtue of a decree of the District Court authorizing the same,

"The Texas Trunk Railroad Company hereby conveys its rights, title and interest in and to Certificate No. 386 issued to said Company by the Commissioner of the General Land Office, dated the 17th day of March, 1882, unto the said Yandell Feris his heirs and assigns, forever.

"In Testimony Whereof, the Receiver of said Company hereto affixes his signature, this 21st day of March, 1882.
              "Thos. M. Simpson
              "Receiver Texas Trunk Railroad Company.

'The State of Texas,
"County of Dallas.

"Before me, James B. Simpson, a Notary Public in and for the State and County above written, this day personally appeared Thomas M. Simpson, known to me to be the person whose name is subscribed to the foregoing instrument, and acknowledged to me that he executed the same as Receiver of the Texas Trunk Railroad Company, for the purposes and considerations therein expressed.

"Given under my hand and seal of office, this 21st day of March, A.D.1882.
              "James B. Simpson
              "Notary Public, Dallas County, Texas."

The quoted deed or transfer also bore the seal of the Texas Trunk Railroad Company.

Further, that Thomas M. Simpson, in addition to having been directed, as before recited, to sell the Railroad Company's assets, was thereafter further ordered, on April 1 of 1882, by the Judge of the 8th District Court of Kaufman County, Texas, sitting in chambers, to sell 216 land certificates issued by the Commissioner of the General Land Office of the State of Texas to such Texas Trunk Railroad Company, at private sale for cash, and to report his action thereon at the next regular term of that court.

■■ The controlling question the appeal presents, as indicated, being that of the validity of appellants' claim to now hold whatever title the Railroad Company got under the certificates, the trial court's theory apparently having been that such title was by them shown to be still outstanding in the Railroad Company, rather than to have passed into themselves, this opinion may be shortened by reducing it to the issue of law thus joined between the parties thereon:

(1) Appellants, upon their part, insist that, at least to the extent of raising an issue of fact over it, they have shown that they acquired the title of the Railroad Company by reason of its Receiver's sales of the two land certificates to Ferris and Schley; that they thereby acquired such a title thereto as appellees, being strangers thereto and without any privity whatever with the sources of such title into appellants, may not dispute it; that while they were unable to show direct and specific orders from the District Court of Kaufman County either to sell these two certificates, or that it thereafter confirmed such sales to Ferris and Schley, they did show circumstances from which the Receiver's authority to sell them, as well as his act in having done so, could legitimately be presumed after the long lapse of time since their issuance in the year 1882; that, even in the absence of such presumed authority, they had further shown themselves entitled to a confirmation of such sales by their many adduced circumstances indicating acquiescence and recognition of their rights from the Railroad Company, and its successors in interest; finally, that, where such a confirmation of a Receiver's sale of properties belonging to his principal is required to be confirmed and approved by the court having jurisdiction over him, such approval does not have to be formally evidenced by an order entered in the court's minutes, but may be shown to have been evidenced in an informal manner, or to have been acquiesced in by the court, and that its approval will be presumed to have been given, in the absence of a written order in its minutes, from sufficiently cogent circumstances aliunde; that such freedom from the requirement of a written order upon its minutes either authorizing or approving such sales is particularly true of ancient sales, like the ones here involved. They support these contentions by an array of authorities, from which alone these few are

selected for citation, to-wit: Simmons v. Blanchard, 46 Tex. 266; Neill v. Cody, 26 Tex. 286; Robertson v. Johnson, 57 Tex. 62, 66; Moody v. Butler, 63 Tex. 210; Corley v. Anderson, 5 Tex.Civ.App. 213, 23 S.W. 839, 842; Continental Supply Co. v. Mack, Tex.Civ.App., 238 S.W. 247; Tucker v. Murphy, 66 Tex. 355, 359, 1 S.W. 76; Turner v. Pope, Tex.Civ.App., 137 S.W. 420; Baker v. Coe, 20 Tex. 429, 430; Texas Civil Statutes of 1879, Art. 3967; Magee v. Paul, 110 Tex. 470, 221 S.W. 254, 256; Stark v. Osborn, 5 Cir., 221 F. 557; 53 C.J., Par. 174, page 144, "Right of Stranger", and footnote 73.

(2) The appellees, upon the other hand, flatly dispute appellants' stated position, insisting in support of the peremptory instruction, in three counterpoints especially, upon this contrary doctrine:

"Counter-Point 3. There being no order of the District Court of Kaufman County on the minutes of said court (the original of which minutes was introduced in evidence by appellees in support of their objection to the introduction of the purported transfers and other parol and extrinsic evidence) authorizing the receiver to sell said certificates to Ferris and Schley, the absence of such order on said minutes is conclusive on the proposition that no such order was ever made by said court.

"Counter-Point 4. There being no order of the District Court on the minutes of said court confirming the purported sales of said Certificates Nos. 386 and 387, the absence of such orders confirming said sales on said minutes is conclusive on the proposition that said sales were not confirmed by said court.

"Counter-Point 5. The evidence in its entirety is insufficient reasonably to support a conclusion that the purported sales were ever either authorized by the court, or reported to it, or confirmed."

They, in turn, rely upon many authorities, of which these are among the leading ones, to-wit: Bendy v. W. T. Carter & Bros., Tex.Com.App., 269 S.W. 1037; Ex Parte Rains, 113 Tex. 428, 257 S.W. 217; Hamilton v. Empire Gas & Fuel Co., 134 Tex. 377, 110 S.W.2d 561; White v. Jones, 67 Tex. 638, 4 S.W. 161; Texas Civil Statutes, 1879, Arts. 1107, 1113, 1129, 1130, 1925, Arts. 899, 1902, 1918; McCormick and Ray, Texas Law of Evidence, p. 970; Texas Jur., Vol. 11, p. 824 (section 85, Title Courts); Turley v. Tobin, Tex.Civ.App., 7

S.W.2d 949; Woods v. Hardware Mut. Cas. Co., Tex.Civ.App., 141 S.W.2d 972.

Not without some hesitation, this court is constrained to accept the appellants' view that the well-settled rules the appellees so depend upon do not interpose an impasse against the possible ripening of a title in them to whatever lands may be shown to have been properly withdrawn from the public domain by authority of the two certificates. If there may be said to be a distinction between the two lines of authorities thus severally relied upon by the parties as controlling here, it may, perhaps, be substantially stated in this way:

In court proceedings, wherein the title to property is undertaken to be divested by direct judgment of the court on a trial of the issue of title, or wherein an execution to subject property to sale in payment of a debt alleged to be established by the judgment is based upon such judgment itself, the whole proceeding would be a nullity, unless there were a previously-existing judgment shown in the minutes, or it had been made to appear therein that an original judgment had actually been rendered, though not entered, and that it was, on motion in that court, thereafter entered in the minutes nunc pro tunc;

Whereas, it is thought, a different rule applies to the establishment of the action, or order, of a court merely manifesting its approval of a sale of property under its jurisdiction made by its Receiver, or other officer of the court, in whom the power to make such a sale had before been vested, subject only to the direction of the court.

If these conclusions be sound, they entail a reversal of the judgment so rendered, and a re-trial of the cause in conformity therewith; that order will be entered, with expression of the further opinion that, on another trial, appellants should be given an opportunity to show, if they can, that the particular land they herein sue for is properly within the grants they declare upon.

Reversed and remanded.

On Motions for Rehearing.

PER CURIAM.

Both sides have filed motions for rehearing—the appellants asking a rendition in their behalf, as per the first prayer in their original brief here, while the appellees, in turn, urge the setting aside of

the former reversal by this court, and that the judgment of the trial court be now in all things affirmed.

Both motions have been carefully considered, and much time and labor consumed in the reconsideration they severally invoked.

But this court, being unconvinced of error in its original disposition, is constrained to adhere to it.

It may not be amiss, however, to thus append a restatement of some of the considerations, upon which both dispositions here have been arrived at, in view of another trial below upon fact-issues pointed out in this court's two opinions herein, to-wit:

The evidence reasonably tends to show:

(1) That the Texas Trunk Railroad Company had been issued Land Certificates Nos. 326–549, inclusive, on March 17, 1882, at which time that Company was in receivership.

(2) That on March 21, 1882, the Receiver executed a transfer of Certificate No. 386 in the name of such Company, but as Receiver, reciting that he had received $100 therefor, and that he was by a decree of the district court authorized to convey such certificate to Yandell Ferris, his heirs, etc.

(3) That upon the same day, by a transfer in identical terms, the Receiver transferred Certificate No. 387 to Geo. H. Schley.

(4) By Patent dated November 29, 1886, the State of Texas transferred one of the sections here involved to the Texas Trunk Railroad Company, or assigns, by virtue of Certificate No. 386, issued March 17, 1882.

(5) By Patent dated November 24, 1886, the State of Texas transferred the other section, here involved, likewise to the Railroad Company, or assigns, by virtue of Certificate No. 387.

(6) These described transfers of certificates, and the patents, were each filed for record in Galveston County on January 8, 1887.

(7) The Receivership was removed to the Federal Court in January, 1883. No inventory there shows any land certificates listed as belonging to this Railroad Company. But, pending such receivership, all of the assets of the Railroad Company were sold at Receiver's sale; however, no reference was made to land certificates, and no claim was ever made that the Receiver, shown by the recited transfers of Certificates Nos. 386 and 387, as officially executing the same, did not account to the court for the proceeds coming into his hands.

(8) The inference of fact—questions of legal validity aside—is strong, if not inescapable, that, more than sixty years ago, the Receiver of the Railroad Company sold the Land Certificates Nos. 386 and 387, and received the consideration therefor, and properly accounted therefor, and that the same was applied to the uses and benefit of the Railroad Company.

(9) As formerly indicated, it was not shown that a judgment of the district court of Kaufman County was entered in the minutes of that court, confirming such sale.

(10) However, from the evidence as a whole, it is deemed that these ensuing results would not have been unreasonable inferences of fact, to-wit: (a) That the transferees of Certificates Nos. 386 and 387 located those certificates upon the land here involved; (b) that they thereby became interests in land; and (c) that, in virtue of such certificates, and their location, the State of Texas parted with the title to the land by force of executing the patents. The patents were uncontrovertedly shown to have been delivered to the predecessors of appellants, and the purpose and effect thereof, presumably at least, was to divest the State of the title to the land.

(11) The evidence was likewise undisputed that, at the date of these patents, it was the practice of the General Land Office, where the titles to certificates were involuntarily transferred, as in the case of Receiver's sales, to patent the land based on such certificates, as was done in this case, in the name of the Railroad Company, or its assigns.

(12) The inference could also be drawn by a jury that, in executing and delivering these patents, no title, either legal or equitable, was intended to be transferred to the Railroad Company, but that it was intended to be transferred to the holders of the involuntary transfers.

(13) And, if so, the legal title then passed to Ferris and Schley, to be by them held for the benefit of the lawful assigns of the Railroad Company.

(14) Such legal title at least passed to the heirs of Ferris and Schley, to whom these patents were manually or physically delivered.

(15) There being evidence from which it could further be inferred by a jury that the legal titles passed to Ferris and Schley, respectively, and there being no evidence that there were any other persons entitled to demand that Ferris and Schley should hold the same in trust for them, it would follow that they took the entire title. Indeed, Article 1291, Vernon's Texas Civil Statutes, provides that every estate in land that is granted shall be deemed a fee simple, if a less estate do not appear to have been granted, conveyed, or devised, by construction or operation of law.

(16) In other words, it was not necessary for appellants to go back to the patents to show prima facie title to this land. Clearly, if the patents had been made out in their names, it could not convincingly be contended that those to whom they were delivered by the State did not establish such a title in themselves, by adducing the patents.

(17) By proving the practice of the General Land Office, at the time of the dates of these patents, to make out, in cases of involuntary transfers of certificates, the patents in the names of those to whom the certificates were originally issued, or their assigns, the appellants proved (or at least offered evidence from which it could be found), prima facie, that title passed, and was intended to pass to him to whom each of the patents was delivered.

(18) The evidence that the patents were delivered to Ferris and Schley, and by them recorded, along with the involuntary transfers of the certificates, and that they located these certificates, is evidence from which the jury could infer that the title which passed out of the State passed into those to whom the patents were delivered. It is to be presumed, however, in such circumstances, that the Commissioner of the General Land Office did his duty, and required evidence that those to whom he delivered the patents were entitled thereto.

(19) The evidence at least tended to show that all of the Railroad Company's certificates were disposed of, and there seems to have been no contention that the Receiver had not accounted for all funds coming into his hands. Such evidence was at least sufficient to raise an issue of fact over whether the Railroad Company had lost title to all its land certificates during the pendency of the receivership.

Both motions for rehearing are overruled.

Overruled.